1  Timothy L. Alger (SBN 160303)
2  **HARRIS SLIWOSKI LLP**
   700 S. Flower Street, Suite 1000
3  Los Angeles, CA 90071
   Telephone:  (424) 273-5500
4  Email: timothy@harris-sliwoski.com

5  *Attorneys for Plaintiffs*
6  Delta Ecommerce LLC d/b/a Sky and Sol,
   and Max Medroso
7

8            **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**
10
11                **SAN JOSE DIVISION**

12

13 | DELTA ECOMMERCE LLC d/b/a SKY        Case No.
   AND SOL, a Delaware limited liability
14 company, and MAX MEDROSO, an          **COMPLAINT FOR INJUNCTIVE
   individual,                           RELIEF, DAMAGES, AND
15                                        OTHER RELIEF**

16                 Plaintiffs,           **DEMAND FOR JURY TRIAL**
17        vs.

18 HAS BRANDS, LLC, a New York limited
   liability company, HAS BRANDS, LLC, a
19 New Jersey limited liability company,
   TEJEDA INC. d/b/a PHOENIX
20 INTERNATIONAL DISTRIBUTION and
   a/k/a, PHX INTERNATIONAL
21 DISTRIBUTION, a California corporation;
   LEONEL TEJEDA, an individual;
22 PHOENIX-HAS BRANDS ENTERPRISE;
   JOHNY SHARMA, an individual; and
23 DOES 1-10, inclusive,
24
25                 Defendants.
26

27

28

Plaintiffs DELTA ECOMMERCE LLC d/b/a SKY AND SOL, and MAX MEDROSO (collectively "Plaintiffs"), by and through counsel, bring this action against Defendants HAS BRANDS, LLC (New York), HAS BRANDS, LLC (New Jersey) (collectively "HAS Brands," which, on information and belief, are alter egos of each other), TEJEDA INC. d/b/a PHOENIX INTERNATIONAL DISTRIBUTION and a/k/a PHX INTERNATIONAL DISTRIBUTION ("Phoenix"), LEONEL TEJEDA ("Tejeda"), PHOENIX-HAS BRANDS ENTERPRISE (a de facto joint venture and RICO enterprise), JOHNY SHARMA ("Sharma"), and DOES 1–10, inclusive.

## I.    **INTRODUCTION**

1.    This action arises from the theft, trafficking in stolen goods, and unlawful sale of Plaintiffs' SKY & SOL skin care and sunscreen products through Amazon's online marketplace.

2.    On June 25, 2025, Shipment #26 containing approximately ≈125,000 units of SKY & SOL products (valued at over ≈$4,000,000 retail) was entrusted to Urbandesi Trucking Inc. for transport. Defendant Sharma was the assigned driver. Shortly after pick-up, Sharma ceased communication, and the vehicle stopped transmitting GPS signals. Both Sharma and the shipment disappeared.

3.    It is believed that Sharma stole Shipment #26 and sold the stolen products to Phoenix and potentially others. On information and belief, Phoenix then sold the stolen products to HAS Brands and other buyers.

4.    HAS Brands resold the stolen SKY & SOL products through Amazon's online marketplace.

5.    The scheme caused Plaintiffs more than ≈$4,000,000 retail in damages, including the direct theft of product, diverted sales, reputational harm and injury to Plaintiffs' valuable mark, and significant investigation and enforcement costs.

6.    To carry out the fraudulent scheme and use Amazon's marketplace to traffic in stolen goods, HAS Brands filed multiple false and fraudulent appeals with

Amazon, deceiving Amazon and consumers nationwide.

7.     This case implicates consumer protection under the Lanham Act (15 U.S.C. §§ 1114, 1125), fraudulent misrepresentation and wire fraud under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964), and related state-law claims.

## II.    JURISDICTION AND VENUE

8.     This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338, the Lanham Act (15 U.S.C. §§ 1114, 1116, 1117, 1125), and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964).

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiffs' state-law claims.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in California, including the theft of Shipment #26 and the distribution of stolen goods from California.

11.     Personal jurisdiction is proper because Defendants Tejeda Inc., Leonel Tejeda, and Johny Sharma are California residents; the theft and initial distribution occurred in California; and HAS Brands purposefully directed business into California by purchasing and selling stolen SKY & SOL products obtained illegally in California.

## III.    THE RICO ENTERPRISE

12.     Plaintiffs allege that Defendants Johny Sharma, Tejeda Inc. d/b/a Phoenix International Distribution, Leonel Tejeda, Has Brands, LLC (New York), Has Brands, LLC (New Jersey), and Does 1–10 (collectively, the "Enterprise Participants") formed an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962.

13.     The Enterprise's purpose was to obtain, traffic in, and resell stolen SKY & SOL products for profit, and to conceal the unlawful nature of those sales from

1  Amazon, consumers, and law enforcement.

2      14.    Defendant Sharma executed the theft of Plaintiffs' products in Shipment

3  #26 by absconding with the goods while serving as the designated truck driver.

4  Sharma thereafter sold the stolen products to Phoenix, HAS Brands, and potentially

5  other buyers.

6      15.    Defendant Tejeda Inc. d/b/a Phoenix International Distribution and

7  Defendant Leonel Tejeda knowingly purchased stolen SKY & SOL products from

8  Sharma, distributed them to others, and acted as a central hub in the scheme. Phoenix

9  coordinated the movement of stolen goods across state lines and served as HAS

10  Brands' primary supplier of SKY & SOL product.

11      16.    Defendants Has Brands, LLC (New York) and Has Brands, LLC (New

12  Jersey) knowingly purchased stolen SKY & SOL products from Phoenix and/or

13  Sharma and resold them on Amazon's online marketplace, misrepresenting them as

14  legitimate goods.

15      17.    To further the scheme, the Enterprise Participants filed false and

16  fraudulent appeals with Amazon in order to maintain the HAS Brands Amazon

17  listings, even after Amazon enforcement actions flagged the sales as unlawful.

18      18.    The Enterprise Participants functioned as a continuing unit with a

19  common purpose of profiting from stolen SKY & SOL products. Each participant had

20  a defined role: Sharma as the thief and supplier, Phoenix/Tejeda as the distributor,

21  and HAS Brands as the online reseller.

22      19.    The Enterprise engaged in interstate commerce by distributing stolen

23  SKY & SOL products from California into multiple states and through Amazon's

24  nationwide marketplace.

25      20.     The conduct of the Enterprise Participants constitutes racketeering

26  activity within the meaning of 18 U.S.C. § 1961(1), including theft, interstate

27  transportation of stolen goods (18 U.S.C. § 2314), wire fraud (18 U.S.C. § 1343), and

28  violations of the Lanham Act (15 U.S.C. §§ 1114, 1125).

21.    The Enterprise caused Plaintiffs more than ≈$4,000,000 in retail damages, including direct theft losses, diverted sales, reputational harm, and enforcement costs.

## IV.    PARTIES

**Plaintiffs**

22.    Plaintiff Delta Ecommerce LLC d/b/a Sky & Sol is a Delaware limited liability company formed October 13, 2020.

23.    Its principal business address is 308 Sherwood Terrace, Middletown, Delaware 19709.

24.    Delta Ecommerce designs, manufactures, and sells FDA-compliant skincare products under the SKY & SOL mark.

25.    Plaintiff Max Medroso is an individual and United States citizen residing in Middletown, Delaware.

26.    He is the sole member and owner of Delta Ecommerce.

27.    Plaintiffs own U.S. and international trademark rights in the SKY & SOL brand.

28.    Specifically, Plaintiffs own pending U.S. Trademark Application Serial No. 98417942 for "SKY & SOL," filed February 23, 2024.

29.    Plaintiffs also hold common law trademark rights through continuous use since June 1, 2023, and European Union trademark rights.

**Defendants**

30.    Defendant HAS Brands, LLC (New York) operates an Amazon storefront (Merchant ID A1L773GETBGUZ2) and maintains a mailing address at 519 8th Ave., Room 800, New York, NY 10018.

31.    Defendant HAS Brands, LLC (New Jersey) was formed March 20, 2023, with a registered address at 227 Butler Street, Elizabeth, NJ 07206, with Eli Halali as registered agent.

32.     On information and belief, the HAS Brands entities along with their controlling individuals, brothers Eli Halali and Oren Halali, are alter egos of each other.

33.     Defendant Tejeda Inc. is a California corporation (Entity No. 5251860) with its principal place of business at 415 Hall Road, Royal Oaks, CA 95076.

34.     Defendant Tejeda Inc. operates under the d/b/a "Phoenix International Distribution" and a/k/a "PHX International Distribution."

35.     Defendant Leonel Tejeda is an individual and California resident with an address at 16231 Apricot Lane, Royal Oaks, CA 95076.

36.     Leonel Tejeda is the Chief Executive Officer and Director of Tejeda Inc., as reflected in the California Secretary of State records filed July 20, 2024.

37.     On information and belief, Leonel Tejeda controls and directs the operations of Tejeda Inc. d/b/a Phoenix International Distribution.

38.     Defendant Johny Sharma is an individual, a licensed commercial truck driver residing in Fremont, California. Sharma was the driver responsible for transporting SKY & SOL products in Shipment #26, and at the same time the products went missing, Sharma himself disappeared.

39.     Defendant Phoenix–HAS Brands Enterprise is a de facto joint venture and RICO enterprise comprised of Tejeda Inc. d/b/a Phoenix International Distribution, Leonel Tejeda, and the HAS Brands entities.

40.     The enterprise operates primarily from California through Tejeda Inc.'s business operations.

41.     The true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, are unknown at this time to Plaintiffs, and Plaintiffs therefore sue said Defendants by fictitious names pursuant to section 474 of the California Code of Civil Procedure. Plaintiffs will amend this Complaint to allege the true names and capacities of the Defendants when the same have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the

Defendants is responsible in some manner for the occurrences, acts and omissions alleged herein, and that Plaintiffs' damages have been, and will be, proximately caused by their conduct.

42.    In doing the acts and things described below, Plaintiffs are informed and believe, and based thereon alleges, that Defendants, and each of them, were the agents, employees, partners, joint venturers, co-conspirators, owners, principals, and/or employers of the remaining Defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership or joint venture. Plaintiff is further informed and believes, and based thereon alleges, that the acts and things described below were known to, authorized and/or ratified by the officers, directors, and managing agents of Defendants, and each of them.

43.    On information and belief, at all times mentioned herein, all of the Defendants, and each of them, unlawfully conspired and acted in concert and participated with one or more of the remaining Defendants, in committing and performing the acts and conduct alleged herein, all to the damage and detriment of Plaintiffs.

44.    Plaintiffs are informed and believe that there exists, and at all times herein mentioned existed, a unity of interest and ownership between each of the Defendants such that any individuality and separateness between each of them ceased, and Defendants are the alter egos of each other such that adherence to the fiction of the separate existence of each Defendant as an entity or individual distinct from the other Defendants would permit an abuse of the corporate privilege, and sanction a fraud and promote injustice. On information and belief, each of the Defendants has a material interest in the ownership, control, governance, management, finances and/or assets of the remaining Defendants.

# V.    FACTUAL ALLEGATIONS

45.    The following facts demonstrate how Defendants operated a coordinated criminal enterprise to steal, traffic, and profit from SKY & SOL products through Amazon's marketplace while deceiving consumers and platform enforcement.

**Timeline of Key Events**

46.    On June 4, 2025, Delta arranged transport of Shipment #26 (≈10,000 units; ≈$4,000,000 retail). (Ex. F)

47.    On June 5, 2025, the shipment was stolen during transport in California and reported to the Whittier, California, Police Department, Case No. 25-902393. (Whittier Police Department provides law enforcement services for the City of Santa Fe Springs, California.) (Ex. A.)

48.    On June 14, 2025, Tejeda Inc. d/b/a Phoenix issued Invoice 1901 to HAS Brands for 2,000 units at $10 (below $16 wholesale). (Ex. H.)

49.    On June 20, 2025, Phoenix posted NixBot promo: "Sky & Sol SPF 50 — $10/unit — 136% ROI — hot seller on Amazon." (Ex. C.)

50.    Between June and July 2025, Plaintiffs discovered HAS Brands' unauthorized listings of stolen SKY & SOL products on Amazon and initiated brand protection enforcement efforts.

51.    Plaintiffs' brand protection agents filed infringement reports with Amazon, resulting in initial removal of HAS Brands' unauthorized listings.

52.    On July 5, 18, and 29, 2025, HAS Brands filed three false and fraudulent appeals with Amazon's enforcement team; the listings were briefly reinstated, then permanently removed. (Ex. I.)

53.    On August 12, 2025, HAS Brands' attorney sent a threat letter to Plaintiff, disputing reports despite notice of theft. (Ex. D.)

**A.    Theft by Sharma and Diversion of SKY & SOL Products**

54.    This section details how Defendants acquired approximately ≈10,000 units of SKY & SOL products through theft and diversion in California, then trafficked them across state lines.

55.    On June 4, 2025, Delta Ecommerce's freight forwarder arranged transport of Shipment #26.

56.    The shipment consisted of approximately ≈10,000 units of SKY & SOL SPF 50 sunscreen and related skincare products. Shipment #26 had a value of roughly ≈$160,000 wholesale and a value exceeding ≈$4,000,000 retail. (See Ex. F (PSI Summary Report and Packing List dated June 4, 2025, documenting shipment contents).)

57.    Shipment #26 passed pre-shipment inspection in Guangzhou, China.

58.    Quality control photos confirmed legitimate product packaging, case labels, and barcodes.

59.    On June 5, 2025, the shipment was diverted and stolen in California while en route to Delta Ecommerce's warehouse in Missouri.

60.    The shipment was loaded onto a truck in California destined for Delta Ecommerce's Missouri warehouse but never arrived at its intended destination.

61.    Instead of delivering the shipment to Plaintiffs' Missouri warehouse, Sharma diverted the load and, on information and belief, sold it to Tejeda Inc. d/b/a Phoenix International Distribution, in California.

62.    Defendant Sharma, the licensed driver identified on the bill of lading, was responsible for transporting the shipment. The bill of lading, trucking company report, and broker communications document Sharma's responsibility and subsequent disappearance. (See Ex. G (Bill of Lading showing Missouri destination, Trucking Company Report, and TGC broker communications dated June 5, 2025).)

63.    Delta Ecommerce promptly reported the theft to the Whittier Police Department (Case No. 25-902393).

64.    Delta Ecommerce filed an insurance claim on June 7, 2025. (See Ex. A (Police Report No. 25-902393 dated June 5, 2025) and Ex. B (Insurance Claim Bill dated June 7, 2025).)

65.    Each SKY & SOL unit bears unique GTINs, SKUs, lot numbers, and expiration dates.

66.    To confirm the theft and trafficking, Delta Ecommerce conducted test purchases from both Phoenix International Distribution and HAS Brands.

67.    These test buys revealed that both companies were selling products with the same unique identifiers (GTINs, SKUs, lot numbers, and expiration dates) as the products stolen from Shipment #26.

68.    Delta later matched these identifiers against those appearing in HAS Brands' Amazon listings and Phoenix invoices.

69.    The matches confirmed that the stolen products were being trafficked by Defendants.

70.    Tejeda Inc. d/b/a Phoenix issued invoices offering SKY & SOL SPF 50 units at $10 per unit. This price was far below Delta's wholesale price of $16 per unit.

71.    Phoenix advertised the stolen goods to resellers in California, New Jersey, and Florida.

72.    Phoenix's emails and chats confirmed that the goods were the same SKY & SOL SPF 50 products with matching lot numbers and expiration dates.

73.    Phoenix offered to ship the SKY & SOL SPF 50 products directly into Amazon fulfillment centers. (See Ex. H (Phoenix Invoice 1901 dated June 14, 2025, and KakaoTalk/WhatsApp exchanges dated June 14-20, 2025, documenting these communications).)

74.    These invoices and communications directly link Tejeda Inc., Leonel Tejeda, and HAS Brands to the stolen goods from Shipment #26.

**B.**     <u>Tejeda Inc./Phoenix's Role: Sourcing and Illicit Marketing</u>

75.     This section shows how Tejeda Inc. d/b/a Phoenix International Distribution, under Leonel Tejeda's direction, knowingly acquired stolen goods and marketed them to Amazon resellers.

76.     Tejeda Inc. d/b/a Phoenix acquired the stolen SKY & SOL products and began marketing them through its "NixBot" chat sales platform.

77.     On June 20, 2025, Phoenix posted: "Sky & Sol SPF 50 — $10/unit — 136% ROI — hot seller on Amazon." (See Ex. C (Phoenix NixBot chat records dated June 20, 2025, showing this exact message).)

78.     The steep discount – compared to Delta's wholesale and retail pricing – demonstrates Phoenix's knowledge that the products that it was offering for sale to resellers had been stolen.

79.     Phoenix's messaging and website expressly targeted Amazon resellers.

80.     Phoenix offered shipment direct to Amazon FBA warehouses and "custom prep services."

81.     Phoenix invoices disclaim responsibility for a buyer's "eligibility to sell on Amazon." This disclaimer effectively acknowledged that Phoenix was selling stolen goods for unauthorized resale on Amazon's marketplace.

82.     While Tejeda Inc. lists a Royal Oaks, California address, Phoenix operates through a Monterey, California virtual mailbox (140 W Franklin St., Ste. 203) to obscure its operations.

83.     On information and belief, Phoenix displayed warehouse images on its website, though it operates from virtual addresses.

84.     On information and belief, Phoenix conceals aspects of its ownership through foreign domain registrations.

85.     Plaintiffs' communications with Phoenix, including KakaoTalk and WhatsApp messages, show Phoenix acknowledged handling SKY & SOL products.

86.    Phoenix negotiated shipments despite being specifically notified that the goods were stolen. (See Ex. H (KakaoTalk/WhatsApp exchanges dated June 14-August 10, 2025, showing Phoenix's continued participation after notice).)

87.    Plaintiffs' test purchases from Phoenix confirmed that Phoenix was selling products stolen from Shipment #26, as evidenced by matching product identifiers. (Ex. K.)

88.    Several companies that initially purchased from Phoenix ceased sales after notice from Plaintiffs, demonstrating that responsible businesses stopped selling upon learning the products were stolen.

89.    HAS Brands, however, continued to purchase and resell the stolen goods to consumers on Amazon despite clear knowledge of their illicit origin.

**C.    HAS Brands' Role: The Amazon Storefront**

90.    This section demonstrates how HAS Brands operated as Phoenix's Amazon front, exploiting Amazon's platform to list stolen products and filing repeated false appeals to maintain those listings despite clear notice of their illicit origin.

91.    Acting as Phoenix's Amazon storefront, HAS Brands listed the stolen SKY & SOL products under its seller ID A1L773GETBGUZ2, using Amazon's marketplace to sell the stolen products.

92.    Plaintiffs' test purchases from HAS Brands confirmed that HAS Brands was selling the same stolen products from Shipment #26, as evidenced by matching product identifiers. (Ex. K)

93.    On July 5, 2025, after Plaintiffs' brand protection agent filed infringement reports, HAS Brands submitted its first false and fraudulent appeal to Amazon's dispute team.

94.    HAS Brands falsely claimed authorization to sell SKY & SOL products.

95.    Amazon reinstated the listings based on HAS Brands' misrepresentations.

96.    On July 18, 2025, HAS Brands filed a second false and fraudulent appeal to Amazon.

97.    HAS Brands again made false claims to Amazon that it was authorized to sell SKY & SOL products.

98.    On July 29, 2025, HAS Brands filed a final appeal after Amazon again removed its listings.

99.    This attempt failed, and Amazon permanently removed HAS Brands' SKY & SOL listings. (See Ex. I (Amazon appeal records dated July 5, 18, and 29, 2025, showing HAS Brands' false representations).)

100.   These appeals were electronic transmissions through Amazon's Seattle-based enforcement systems. Each appeal made false statements designed to defraud Plaintiff, as well as consumers and Amazon.

101.   On August 12, 2025, HAS Brands' attorney, Jonathan Berkowitz, sent a letter to Plaintiffs.

102.   The letter accused Plaintiffs of "bombarding Amazon with bogus reports" and threatened counterclaims. (See Ex. D (Berkowitz letter dated August 12, 2025).)

**D.    <u>Consumer Deception and False Advertising</u>**

103.   This section shows how Defendants' sales caused consumer confusion on Amazon's platform regarding product authenticity, warranty coverage, and safety, creating public health risks and marketplace confusion.

104.   Only authorized sellers may truthfully represent that SKY & SOL products are FDA-compliant, covered by warranty, and subject to proper quality control.

105.   HAS Brands' Amazon listings falsely implied that it was an authorized reseller of SKY & SOL products. This deceived consumers into believing the

products carried SKY & SOL warranties and quality protections.

106. Plaintiffs received multiple customer complaints and consumer communications. These showed confusion and concern over the authenticity of SKY & SOL products purchased from HAS Brands and Phoenix. (See Ex. J (Customer complaints and "Your Stolen Products Matter" correspondence dated July-August 2025, demonstrating consumer confusion).)

107. Plaintiffs have built a strong reputation based on the quality and effectiveness of the SKY & SOL products, which require proper storage and handling to remain effective and safe. Sunscreen products are particularly sensitive to temperature, humidity, and storage conditions, and must be handled through channels approved and monitored by Plaintiffs to ensure product integrity and consumer safety.

108. Diverted or mishandled goods pose health risks to consumers who rely on effective sunscreen protection, further amplifying the public interest harm.

**E.    The Phoenix–HAS Brands Joint Enterprise and RICO Violations**

109. This section establishes how Phoenix and HAS Brands operated as a joint enterprise engaged in theft, trafficking in stolen goods, sale to resellers, sale to unsuspecting consumers, and misrepresentations to Amazon, with specific predicate acts of wire fraud, mail fraud, and trafficking in stolen property spanning three months.

110. Phoenix and HAS Brands operated as a joint venture and RICO enterprise to traffic stolen SKY & SOL products.

111. Phoenix supplied the goods, issued invoices, and marketed via NixBot and other reseller channels.

112. HAS Brands operated the Amazon storefront, made false statements to Amazon, and sold the goods to consumers while knowing that the goods had been stolen and that HAS Brands is not an authorized reseller of SKY & SOL products. (See Ex. H (Phoenix Invoice 1901 dated June 14, 2025, and July 8, 2025 invoice

documenting Phoenix sales to HAS Brands of thousands of SKY & SOL units shipped via FedEx interstate commerce).)

113. Phoenix targeted Amazon resellers, while HAS Brands filed fraudulent appeals to keep stolen products listed.

114. Payments flowed between the entities via interstate wires.

115. The enterprise's conduct spanned at least June through August 2025.

116. The conduct involved multiple predicate acts of wire fraud, mail fraud, and trafficking in stolen property.

**1.    RICO Enterprise**

117. Phoenix and HAS Brands formed a de facto enterprise under 18 U.S.C. § 1961(4).

118. This was an ongoing organization with a common purpose of trafficking stolen SKY & SOL products through Amazon's marketplace.

119. The enterprise operated through a division of labor: Phoenix sourced and wholesaled stolen goods while HAS Brands managed the Amazon storefront and customer sales.

120. The enterprise conducted its affairs through a pattern of racketeering activity designed to: (a) acquire stolen SKY & SOL inventory; (b) disguise the illicit nature of the goods; (c) list and sell stolen products on Amazon's marketplace; (d) sustain sales when challenged by filing fraudulent appeals; and (e) profit from the sale of stolen goods while evading detection.

**2.    Pattern of Racketeering Activity**

121. The enterprise's pattern of racketeering activity consisted of the following predicate acts under 18 U.S.C. § 1961(1):

122. June 14, 2025 — Wire Fraud (18 U.S.C. § 1343). Phoenix emailed Invoice 1901 to HAS Brands for stolen SKY & SOL units, misrepresenting source legitimacy. (Ex. H.)

123.    June 14–19, 2025 — Transport of Stolen Property / Mail Fraud (18 U.S.C. §§ 2314, 1341). Phoenix/HAS Brands shipped stolen units via FedEx in interstate commerce to execute the scheme. (Ex. H.)

124.    July 5, 2025 — Wire Fraud. HAS Brands electronically submitted a false authorization appeal to Amazon's Seattle dispute system. (Ex. I.)

125.    July 8, 2025 — Wire Fraud. Phoenix sent a second fraudulent invoice to HAS Brands for additional stolen units. (Ex. H.)

126.    July 8–12, 2025 — Transport of Stolen Property / Mail Fraud. Second interstate shipment completed via FedEx. (Ex. H.)

127.    July 18, 2025 — Wire Fraud. HAS Brands lodged a second false appeal through Amazon's Seattle systems. (Ex. I.)

128.    July 29, 2025 — Wire Fraud. HAS Brands lodged a third false appeal through Amazon's enforcement systems. (Ex. I.)

129.    June–August 2025 — Interstate Transportation/Trafficking of Stolen Property (18 U.S.C. §§ 2314, 2315). Defendants transported, received, and sold stolen SKY & SOL products exceeding ≈$4,000,000 retail in value across state lines. (Exs. H, I.)

### 3.    Conduct of the Enterprise's Affairs

130.    Defendants conducted the affairs of the enterprise through a pattern of racketeering activity.

131.    Phoenix knowingly acquired stolen SKY & SOL inventory from Sharma, who diverted the shipment in California.

132.    Phoenix marketed the stolen goods through its NixBot platform, specifically targeting Amazon resellers.

133.    HAS Brands created and managed Amazon storefronts to retail the stolen products to consumers.

134.    Both entities coordinated pricing, shipping, and payment arrangements through interstate communications.

135.    HAS Brands filed false appeals with Amazon when listings were removed.

136.    Both entities benefitted from the profits derived from the illegal sales while concealing the stolen nature of the goods from Amazon and consumers.

137.    Both entities utilized legal threats to deter Plaintiffs from asserting their property rights.

138.    The pattern of racketeering activity spans at least three months (June-August 2025).

139.    The pattern involved at least eight separate predicate acts occurring in multiple states.

140.    This demonstrates continuity and relationship among the predicate acts.

141.    Through this arrangement, Phoenix acted as wholesale supplier and HAS Brands operated as the Amazon storefront.

142.    Payments flowed between them via interstate wire transfers and mail shipments.

143.    These acts were not isolated, but continuous from June 2025 through at least the filing of this Complaint.

144.    The acts constitute a continuing pattern of racketeering activity that threatens ongoing harm to Plaintiffs and the marketplace.

**4.    Pattern of Misconduct: Prior ASICS Lawsuit**

145.    HAS Brands' misconduct is not isolated. In *ASICS America Corp. v. HAS Brands LLC*, Case No. 8:23-cv-02262-FWS-DFM (U.S. District Court, C.D. Cal.), ASICS alleged unauthorized Amazon sales in 2023. (See Ex. E (HAS Brands Answer dated Jan. 31, 2024, admitting business operations and identity).)

146.    In that action, Oren Halali admitted he is a principal of HAS Brands LLC (New York).

147.    The case settled in 2024 with HAS Brands agreeing to cease unauthorized ASICS sales.

148.  This prior matter shows a recurring pattern of unauthorized brand trafficking and supports continuity and intent relevant to RICO and California state law claims.

## VI.    CLAIMS FOR RELIEF

### COUNT I

**Unfair Competition and False Designation of Origin**

**(15 U.S.C. § 1125(a))**

149.  By misrepresenting themselves as authorized SKY & SOL sellers and using Plaintiffs' trademarks and trade dress, Defendants violated the Lanham Act's unfair competition provisions.

150.  Plaintiffs incorporate by reference all prior paragraphs.

151.  Plaintiffs own common law trademark rights in "SKY & SOL" through continuous use since June 1, 2023, and have a pending federal trademark application.

152.  Defendants' use of Plaintiffs' marks and trade dress created a likelihood of confusion as to source, sponsorship, affiliation, or approval.

153.  Defendants presented themselves as authorized sellers, creating a false designation of origin.

154.  This conduct deceived consumers and harmed Plaintiffs' goodwill.

155.  Defendants misrepresented the nature, characteristics, and qualities of the goods by selling unauthorized products without proper authorization.

156.  These misrepresentations included false claims about source, warranty coverage, and compliance with quality controls.

157.  The first sale doctrine does not apply because Defendants never lawfully purchased the SKY & SOL products from Delta Ecommerce or any authorized distributor.

158.  The products were stolen/diverted before any legitimate sale occurred.

159.  Plaintiffs are entitled to injunctive relief and damages under 15 U.S.C. § 1125(a).

1

<u>**COUNT II**</u>

2

**False Advertising (15 U.S.C. § 1125(a)(1)(B))**

3      160.   Defendants falsely advertised themselves as authorized SKY & SOL

4   sellers on Amazon, making material misrepresentations that diverted sales and

5   harmed Plaintiffs' brand.

6      161.   Plaintiffs incorporate by reference all prior paragraphs.

7      162.   Defendants made false and misleading statements in commercial

8   advertising and promotion.

9      163.   Defendants represented themselves as authorized SKY & SOL sellers

10   on Amazon marketplace when they were not authorized.

11      164.   These false representations were material to consumers' purchasing

12   decisions.

13      165.   The representations included implied claims about warranty coverage,

14   quality control compliance, and authorized seller status.

15      166.   Defendants' false advertising occurred in interstate commerce through

16   Amazon's national marketplace.

17      167.   The advertising was designed to influence purchasing decisions and

18   diverted sales from Plaintiffs.

19      168.   As a direct and proximate result, Plaintiffs suffered diverted sales,

20   brand harm, lost business opportunities, and other damages.

21      169.   Plaintiffs are entitled to injunctive relief and damages under 15 U.S.C.

22   § 1125(a)(1)(B).

23

<u>**COUNT III**</u>

24

**California Penal Code § 496 (Civil Theft)**

25      170.   Defendants knowingly received, purchased, concealed, and sold stolen

26   SKY & SOL products in violation of California Penal Code § 496(a).

27      171.   In *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal.5th 333 (2022), the

28   California Supreme Court held that Penal Code § 496(c)'s treble damages and

attorneys' fees remedy applies not only to "classic fencing" cases but also to business disputes where property is obtained "in any manner constituting theft," provided that criminal intent is shown.

172. Plaintiffs incorporate by reference all prior paragraphs, which demonstrate that Defendants acted with the requisite criminal intent, not merely inadvertence or breach of contract.

173. Defendants bought, received, concealed, and sold personal property that they knew was stolen, as evidenced by (a) invoices offering goods at below-market pricing immediately after the theft, (b) test purchases showing identical lot numbers to the stolen shipment, and (c) repeated sales and appeals after being specifically notified of the theft.

174. Specifically, Tejeda Inc. d/b/a Phoenix International Distribution received the stolen Shipment #26 and sold thousands of units to HAS Brands and other purchasers.

175. HAS Brands knowingly purchased and resold the stolen goods, continuing their sales after explicit notice of the theft.

176. The facts alleged, including Defendants' continuation of sales after police reports, insurance claims, and written notice, demonstrate that Defendants acted deliberately and with careful planning, reflecting the criminal intent required for liability under Penal Code § 496. This is not an "ordinary commercial dispute," but intentional trafficking in stolen goods.

177. Defendants' conduct violated California Penal Code § 496(a).

178. California Penal Code § 496(c) provides that any person who has been injured by a violation of § 496(a) may bring an action for three times the amount of actual damages.

179. Plaintiffs suffered actual damages exceeding ≈$4,000,000 retail from the theft and trafficking of their property.

180.   Plaintiffs are entitled to treble damages totaling at least $960,000, plus attorney fees and costs.

## COUNT IV

### Conversion (California Common Law)

181.   By knowingly taking possession of stolen Shipment #26 and reselling it on Amazon, Defendants committed conversion under California law.

182.   Plaintiffs incorporate by reference all prior paragraphs.

183.   Plaintiffs owned and had the right to possess the products in Shipment #26.

184.   Defendants wrongfully exercised dominion and control over these goods.

185.   Defendants acquired the goods through theft/diversion in California and sold them without authorization.

186.   Plaintiffs were thereby deprived of their property and business opportunities.

187.   As a direct and proximate result, Plaintiffs have suffered damages exceeding ≈$4,000,000 retail.

## COUNT V

### Trespass to Chattels (California Common Law)

188.   Defendants intentionally interfered with Plaintiffs' personal property by wrongfully taking possession of and exercising control over stolen SKY & SOL products.

189.   Plaintiffs incorporate by reference all prior paragraphs.

190.   Plaintiffs owned personal property consisting of approximately 10,000 units of SKY & SOL products in Shipment #26.

191.   Defendants intentionally interfered with Plaintiffs' possessory rights by taking possession of the stolen goods.

192.   Defendants' interference was substantial, as they deprived Plaintiffs of the use and possession of valuable inventory worth over ≈$4,000,000 retail.

193.   Defendants had no right or privilege to possess, use, or sell Plaintiffs' property.

194.   Defendants' conduct was a substantial factor in causing harm to Plaintiffs' property interests.

195.   As a direct and proximate result, Plaintiffs suffered damages including loss of inventory, diverted sales, and harm to business reputation.

**COUNT VI**

**California Unfair Competition**

**(Bus. & Prof. Code §§ 17200 et. seq.)**

196.   Defendants engaged in unlawful, unfair, and fraudulent business practices by trafficking stolen goods and misrepresenting their authorization to sell SKY & SOL products.

197.   Plaintiffs incorporate by reference all prior paragraphs.

198.   Defendants engaged in "unlawful" business practices by violating California Penal Code § 496 (receiving stolen property), federal wire fraud statutes, and trademark laws.

199.   Defendants engaged in "unfair" business practices by competing against Plaintiffs using stolen inventory, giving them an improper advantage in the marketplace.

200.   Defendants engaged in "fraudulent" business practices by misrepresenting themselves to consumers and Amazon as authorized SKY & SOL resellers.

201.   Defendants' conduct occurred in the course of business and affected the public interest by exposing consumers to potentially compromised sunscreen products and undermining marketplace integrity.

202. Plaintiffs have standing as competitors who have been injured by Defendants' unfair competition.

203. Plaintiffs lost sales and customers directly due to Defendants' unlawful conduct.

204. Plaintiffs are entitled to injunctive relief and restitution under Business & Professions Code § 17203.

**COUNT VII**

**California False Advertising**

**(Bus. & Prof. Code §§ 17500 et seq.)**

205. Defendants violated California's False Advertising Law by making false and misleading statements about their authorization to sell SKY & SOL products.

206. Plaintiffs incorporate by reference all prior paragraphs.

207. Defendants made statements in their advertising, marketing, and sales materials that were untrue or misleading.

208. Specifically, Defendants represented themselves as authorized SKY & SOL sellers when they had no such authorization.

209. Defendants' Amazon listings and marketing materials falsely implied legitimate source, warranty coverage, and quality control compliance.

210. These statements were made in connection with the sale of goods to consumers.

211. The statements were material to consumers' purchasing decisions.

212. Defendants knew or should have known that their representations were false and misleading.

213. Defendants' false advertising was designed to promote sales and divert customers from authorized channels.

214. As a direct result, Plaintiffs suffered damages including diverted sales, brand harm, and lost business opportunities.

1    215.   Plaintiffs are entitled to injunctive relief, restitution, and civil penalties

2    under Business & Professions Code § 17500.

3                                        **COUNT VIII**

4                            **Civil RICO (18 U.S.C. § 1962(c))**

5    216.   Defendants operated a criminal enterprise through eight predicate acts

6    of wire fraud, mail fraud, and trafficking in stolen property, causing over

7    ≈$4,000,000 retail in damages to Plaintiffs.

8    217.   Plaintiffs incorporate by reference all prior paragraphs.

9    218.   Defendants conducted the affairs of an enterprise engaged in interstate

10   commerce through a pattern of racketeering activity.

11   219.   The racketeering activity included wire fraud (18 U.S.C. § 1343), mail

12   fraud (18 U.S.C. § 1341), and trafficking in stolen property (18 U.S.C. § 2314).

13   220.   Specific predicate acts include Phoenix's June 14 and July 8, 2025

14   invoices transmitted electronically.

15   221.   Additional predicate acts include HAS Brands' July 5, 18, and 29, 2025

16   false appeals submitted electronically to Amazon's Seattle systems.

17   222.   Further predicate acts include FedEx interstate shipments of stolen

18   goods.

19   223.   As a direct and proximate result, Plaintiffs lost approximately 10,000

20   units of SKY & SOL products valued at over ≈$4,000,000 retail.

21   224.   Plaintiffs suffered diverted sales, brand harm, and investigation costs.

22   225.   Plaintiffs are entitled to treble damages, costs, and attorneys' fees

23   pursuant to 18 U.S.C. § 1964(c).

24                                        **COUNT IX**

25                            **RICO Conspiracy (18 U.S.C. § 1962(d))**

26   226.   Defendants conspired to operate their criminal enterprise, with

27   evidence including coordinated invoices, targeted marketing, and joint appeals to

28   protect their scheme.

227.  Plaintiffs incorporate by reference all prior paragraphs.

228.  Defendants agreed and conspired to participate in the racketeering enterprise.

229.  Evidence of agreement includes coordinated invoices between Phoenix and HAS Brands.

230.  Evidence includes Phoenix's marketing of SKY & SOL specifically to HAS Brands.

231.  Evidence includes HAS Brands' filing of false and fraudulent appeals to protect the conspiracy.

232.  Each Defendant knowingly agreed to participate with intent to traffic stolen SKY & SOL products.

233.  Phoenix's cut-rate pricing indicated knowledge of illicit sourcing.

234.  HAS Brands filed false and fraudulent appeals to Amazon claiming authorization they knew they lacked.

235.  Both entities continued coordination even after being informed the products were stolen.

236.  Defendants are jointly and severally liable for the damages caused by this conspiracy.

## COUNT X

### Intentional Interference with Prospective Economic Advantage

### (California Common Law)

237.  By flooding Amazon with stolen product and undercutting authorized channels, Defendants intentionally derailed Plaintiffs' expected customer relationships.

238.  Plaintiffs incorporate by reference all prior paragraphs.

239.  Plaintiffs had reasonable expectations of future economic relationships with consumers on Amazon. The identities of these consumers are known to Defendants will be disclosed to Plaintiffs in discovery.

240. Defendants knew of these prospective economic relationships through their targeting of the SKY & SOL brand specifically.

241. Defendants intentionally interfered with these prospective economic relationships by trafficking stolen goods and diverting consumers on Amazon.

242. Defendants used wrongful means, including theft, fraud, and misrepresentation.

243. Defendants' interference was a substantial factor in disrupting Plaintiffs' prospective economic advantage.

244. Plaintiffs suffered economic harm including lost sales, damaged reputation, and diminished business opportunities.

245. The interference was not justified by legitimate competitive interests given that it was based on criminal conduct.

## COUNT XI

### Unjust Enrichment (California Common Law)

246. Defendants unjustly profited from trafficking Plaintiffs' stolen property and must disgorge their ill-gotten gains.

247. Plaintiffs incorporate by reference all prior paragraphs.

248. Defendants received benefits (profits from stolen goods) at Plaintiffs' expense.

249. Defendants' retention of these benefits is unjust given that they were derived from stolen property.

250. Defendants had knowledge that the benefits were derived from wrongful conduct.

251. It would be inequitable for Defendants to retain these ill-gotten gains.

252. Plaintiffs are entitled to disgorgement of all profits Defendants obtained from the unauthorized sale of SKY & SOL products.

## COUNT XII

### Declaratory Judgment (28 U.S.C. §§ 2201, 2202)

253.   An actual controversy exists regarding Defendants' claimed authority to sell SKY & SOL products, requiring judicial declaration to prevent continuing harm.

254.   Plaintiffs incorporate by reference all prior paragraphs.

255.   An actual controversy exists between Plaintiffs and Defendants regarding Defendants' claimed authority to sell SKY & SOL products.

256.   Plaintiffs contend, and Defendants deny, that Defendants are not authorized sellers of any SKY & SOL products, let alone stolen SKY & SOL products.

257.   Plaintiffs seek a declaratory judgment confirming that Defendants have no authorization or right to sell SKY & SOL products.

258.   This declaration is necessary to prevent continuing harm and to clarify the parties' legal relations.

## VII.   DAMAGES

259.   The theft of Shipment #26 alone caused a direct loss of at least ≈$4,000,000 in retail value.

260.   Plaintiffs have already incurred substantial legal fees, investigation costs, and enforcement expenses as a result of Defendants' misconduct, and will continue to incur such costs until Defendants' unlawful conduct is enjoined.

261.   As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered:

262.   **Loss of Stolen Inventory**: Approximately≈$4,000,000 in retail value from Shipment #26.

263.   **Diverted Sales**: Additional lost revenue from consumers who purchased SKY & SOL products from Defendants instead of authorized channels, depriving Plaintiffs of retail margins and disrupting their authorized distribution

network.

264. **Brand Harm**: Significant damage to the SKY & SOL brand reputation caused by unauthorized discount resales, including consumer confusion about authorization and association with stolen goods.

265. **Investigation and Enforcement Costs**: Substantial costs already incurred and continuing to be incurred for legal fees, private investigation, brand protection monitoring, law enforcement cooperation, and enforcement actions against unauthorized sellers.

266. **Lost Business Opportunities**: Harm to relationships with authorized distributors and retailers, and lost opportunities for brand expansion due to marketplace confusion and reputational damage.

267. **Ongoing Monitoring Costs**: Continuing expenses for brand protection services and monitoring to prevent future unauthorized sales.

268. Absent injunctive relief, Plaintiffs must continue incurring substantial brand-protection and marketplace-monitoring costs to mitigate consumer deception and public-health risks from diverted, potentially degraded sunscreen.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

**A.    Injunctive Relief**

1. A temporary restraining order and preliminary injunction immediately enjoining Defendants from:

2. Trafficking, selling, offering for sale, or distributing any SKY & SOL products without written authorization;

3. Using Plaintiffs' trademarks, trade names, or trade dress in any manner;

4. Misrepresenting their relationship with or authorization from Plaintiffs;

5. Filing false appeals or making false representations to Amazon or other platforms;

6.    Further interfering with Plaintiffs' existing and prospective business relationships;

7.    A permanent injunction after trial incorporating the same prohibitions.

**B.    Monetary Relief**

8.    An accounting and disgorgement of all Defendants' revenues and profits derived from unauthorized sales of SKY & SOL products;

9.    Actual damages in an amount to be proven at trial, but not less than ≈$4,000,000 retail, including the full retail value of stolen inventory, diverted sales, and investigation costs;

10.    Treble damages under RICO (18 U.S.C. § 1964(c)), California Penal Code § 496(c), and the Lanham Act (15 U.S.C. § 1117);

11.    Restitution and disgorgement under California Business & Professions Code §§ 17200, et seq. and 17500, et seq.

12.    Pre- and post-judgment interest at the maximum rate allowed by law.

**C.    Equitable Relief**

13.    An order requiring Defendants to deliver up for destruction all infringing/unauthorized SKY & SOL goods, packaging, promotional materials, and any materials bearing Plaintiffs' trademarks.

14.    Asset preservation orders as necessary to prevent dissipation of Defendants' unlawful profits.

15.    An order imposing a constructive trust over Defendants' revenues from unauthorized sales of SKY & SOL products and freezing Defendants' assets sufficient to satisfy any judgment in this case.

16.    An ex parte seizure order under 15 U.S.C. § 1116(d) authorizing seizure of infringing goods and related records in Defendants' possession, custody, or control.

17.    An order directing Amazon to (i) disable any listings offering SKY & SOL products by Defendants, (ii) preserve and produce seller account records, and

(iii) hold all disbursements associated with such sales pending further order.

18.     Expedited discovery under Fed. R. Civ. P. 26(d)(1), including third-party subpoenas to Amazon, payment processors, and carriers.

19.     A preservation order requiring Defendants and Amazon to preserve all listing data, appeal records, communications, financial records, and other relevant documents.

**D.     Fees and Costs**

20.     Attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c), 15 U.S.C. § 1117, and California Penal Code § 496(c).

21.     Such other and further relief as the Court deems just and proper.

Dated: August 20, 2025          HARRIS SLIWOSKI LLP

                                By:   *Timothy L. Alger*
                                      Timothy L. Alger

                                      *Attorneys for Plaintiffs*
                                      Delta Ecommerce LLC d/b/a Sky and Sol
                                      and Max Medroso

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Delta Ecommerce LLC d/b/a Sky and Sol and Max Medroso hereby demands a trial by jury on all issues so triable.

Dated: August 20, 2025          HARRIS SLIWOSKI LLP

                                By:   *Timothy L. Alger*
                                      Timothy L. Alger

                                      *Attorneys for Plaintiff*
                                      Delta Ecommerce LLC d/b/a Sky and Sol
                                      and Max Medroso

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE