1  Timothy L. Alger (SBN 160303)
2  **HARRIS SLIWOSKI LLP**
3  700 S. Flower Street, Suite 1000
   Los Angeles, CA 90071
4  Telephone:  (424) 273-5500
   Email: timothy@harris-sliwoski.com
5
6  *Attorneys for Plaintiffs*
   Delta Ecommerce LLC d/b/a Sky and Sol,
7  and Max Medroso

8              **UNITED STATES DISTRICT COURT**
9
10           **NORTHERN DISTRICT OF CALIFORNIA**
11                  **SAN JOSE DIVISION**
12

| | |
|---|---|
| 13  DELTA ECOMMERCE LLC d/b/a SKY AND SOL, a Delaware limited liability company, and MAX MEDROSO, an individual, | Case No. |
| 15 | **AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF** |
| 16                     Plaintiffs, | |
| 17           vs. | **DEMAND FOR JURY TRIAL** |
| 18  HAS BRANDS, LLC, a New York limited liability company, TEJEDA INC. d/b/a PHOENIX INTERNATIONAL DISTRIBUTION and a/k/a, PHX INTERNATIONAL DISTRIBUTION, a California corporation; LEONEL TEJEDA, an individual; JOHNY SHARMA, an individual; and DOES 1-10, inclusive, | |
| 24                  Defendants. | |

26       Plaintiffs DELTA ECOMMERCE LLC d/b/a SKY AND SOL, and MAX
27  MEDROSO (collectively "Plaintiffs"), by and through counsel, bring this action
28  against Defendants HAS BRANDS, LLC, TEJEDA INC. d/b/a PHOENIX

INTERNATIONAL DISTRIBUTION a/k/a PHX INTERNATIONAL DISTRIBUTION ("Phoenix"), LEONEL TEJEDA ("Tejeda"),  JOHNY SHARMA ("Sharma"), and DOES 1–10,  inclusive.

## I.    INTRODUCTION

1.    This action arises from the theft, trafficking in stolen goods, and unlawful sale of Plaintiffs' SKY & SOL skin care and sunscreen products through Amazon's online marketplace.

2.    On or about July 7, 2025, Shipment #26, containing more than 120,000 units of SKY & SOL products (valued at more than $4,000,000) was entrusted to Urbandesi Trucking Inc. for transport. Defendant Sharma was the assigned driver. Shortly after pick-up, Sharma ceased communication, and the vehicle stopped transmitting GPS signals. Both Sharma and the shipment disappeared.

3.    It is believed that Sharma stole Shipment #26 and sold the stolen products to Phoenix and possibly to others as well. On information and belief, Phoenix then sold the stolen products to various buyers and, on information and belief, to Defendant HAS Brands.

4.    By July 10, 2025, stolen SKY & SOL products had begun appearing on Amazon.

5.    By  July 19, 2025, HAS Brands had begun selling stolen SKY & SOL products through Amazon.

6.    The scheme caused Plaintiffs more than $4,000,000 in damages, including the direct theft of product, diverted sales, reputational harm, and injury to Plaintiffs' valuable mark, and significant investigation and enforcement costs.

7.    To carry out the fraudulent scheme and use Amazon's marketplace to traffic in stolen goods, HAS Brands filed multiple false and fraudulent appeals with Amazon, deceiving Amazon and consumers nationwide.

8.    This case implicates the Lanham Act (15 U.S.C. §1125), fraudulent misrepresentation and wire fraud under the Racketeer Influenced and Corrupt

1  Organizations Act (18 U.S.C. § 1964), and related state-law claims.

2  **II.    JURISDICTION AND VENUE**

3      9.      This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and

4  1338, the Lanham Act (15 U.S.C. §§ 1116, 1117, 1125), and the Racketeer

5  Influenced and Corrupt Organizations Act (18 U.S.C. § 1964).

6      10.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for

7  Plaintiffs' state-law claims.

8      11.     Venue is proper in this District under 28 U.S.C. § 1391 because a

9  substantial part of the events giving rise to these claims occurred in California,

10  including the diversion of Shipment #26 to Phoenix's warehouse (and not to

11  Missouri) and the distribution of stolen goods from that warehouse within California

12  and to other parts of the United States.

13      12.     Personal jurisdiction is proper because Defendants Tejeda Inc., Leonel

14  Tejeda, and Johny Sharma are California residents; the theft and initial distribution

15  occurred in California; and HAS Brands purposefully directed business into

16  California by purchasing and selling stolen SKY & SOL products obtained illegally

17  in California. Defendants' conduct caused foreseeable harm to Plaintiffs' California

18  customers and to the California marketplace.

19  **III.    THE RICO ENTERPRISE**

20      13.     Plaintiffs allege that Defendants Johny Sharma, Tejeda Inc. d/b/a

21  Phoenix International Distribution, Leonel Tejeda, HAS Brands, LLC, and Does 1–

22  10 (collectively, the "Enterprise Participants") formed an association-in-fact

23  enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962 (the "Enterprise").

24      14.     The Enterprise's purpose was to obtain, traffic in, and resell stolen SKY

25  & SOL products for profit, and to conceal the unlawful nature of those sales from

26  Amazon, consumers, and law enforcement.

27      15.     Defendant Sharma executed the theft of Plaintiffs' products in Shipment

28  #26 by absconding with the goods while serving as the designated truck driver. On

1    information and belief, Sharma thereafter sold the stolen products to Phoenix.

2        16.    Defendant Tejeda Inc. d/b/a Phoenix International Distribution and
3    Defendant Leonel Tejeda knowingly purchased stolen SKY & SOL products from
4    Sharma, distributed them to others, and acted as a central hub in the scheme. Phoenix
5    coordinated the movement of stolen goods across state lines and, on information and
6    belief, served as HAS Brands' supplier of SKY & SOL product.

7        17.    Defendant HAS Brands knowingly purchased stolen SKY & SOL
8    products from Phoenix and/or Sharma and/or resold them on Amazon's online
9    marketplace, misrepresenting them as legitimate goods.

10       18.    To further the scheme, HAS Brands filed false and fraudulent appeals
11   with Amazon in order to maintain the HAS Brands Amazon listings, even after
12   Amazon enforcement actions flagged the sales as unlawful.

13       19.    The Enterprise functioned as a continuing unit with a common purpose
14   of profiting from stolen SKY & SOL products. Each Enterprise Participant had a
15   defined role: Sharma as the thief and supplier, Phoenix/Tejeda as the distributor, and
16   HAS Brands as the online reseller.

17       20.    The Enterprise engaged in interstate commerce by distributing stolen
18   SKY & SOL products from California into multiple states and through Amazon's
19   nationwide marketplace.

20       21.    The conduct of the Enterprise Participants constitutes racketeering
21   activity within the meaning of 18 U.S.C. § 1961(1), including theft, interstate
22   transportation of stolen goods (18 U.S.C. § 2314), wire fraud (18 U.S.C. § 1343), and
23   violations of the Lanham Act (15 U.S.C. § 1125).

24       22.    The Enterprise caused Plaintiffs more than $4,000,000 in damages,
25   including direct theft losses, diverted sales, reputational harm, and enforcement costs.

26
27
28

1

**IV.   <u>PARTIES</u>**

2

<u>**Plaintiffs**</u>

3       23.    Plaintiff Delta Ecommerce LLC d/b/a Sky & Sol is a Delaware limited

4  liability company formed on October 13, 2020.

5       24.    Its principal business address is 308 Sherwood Terrace, Middletown,

6  Delaware 19709.

7       25.    Plaintiff Delta Ecommerce designs, manufactures, and sells FDA-

8  compliant sunscreen and skincare products under the SKY & SOL mark.

9       26.    Plaintiff Max Medroso is an individual and United States citizen

10 residing in Puerto Rico.

11       27.    Plaintiff Max Medroso is the sole member and owner of Delta

12 Ecommerce.

13       28.    Plaintiffs own valuable trademark rights in the SKY & SOL brand,

14 including registered trademarks in China and Australia, a pending U.S. federal

15 trademark application, and established U.S. common law trademark rights.

16       29.    Specifically, Plaintiffs own pending U.S. Trademark Application Serial

17 No. 98417942 for "SKY & SOL," filed February 23, 2024, covering sunscreen and

18 skincare products in International Class 3.

19       30.    Plaintiffs have continuously used the SKY & SOL mark in interstate

20 commerce since June 1, 2023, establishing superior common law trademark rights

21 throughout the United States.

22       31.    Plaintiffs' use of the SKY & SOL mark has been substantial,

23 continuous, and exclusive, including:

24            a.    Manufacturing (through China) and selling more than 500,000

25 SKY & SOL products through June 2025.

26            b.    Generating significant annual revenue in the hundreds of

27 thousands of dollars under the SKY & SOL brand;

28            c.    Selling SKY & SOL products through established retail

partnerships and authorized distribution networks;

        d.      Maintaining an active online presence at https://skyandsol.co since August 8, 2023, with substantial monthly visitor traffic;

        e.      Conducting marketing campaigns with meaningful expenditures to establish brand presence and consumer recognition.

32.    Through this extensive use, Plaintiffs have developed substantial goodwill and consumer recognition in the SKY & SOL mark, particularly in the sunscreen and skincare markets

33.    The SKY & SOL mark has acquired distinctiveness and secondary meaning, with consumers recognizing it as identifying Plaintiffs' products exclusively.

34.    Plaintiffs maintain strict quality control over all SKY & SOL products, including FDA compliance for sunscreen formulations, temperature-controlled storage requirements, and authorized distribution channels to ensure product safety and efficacy.

**Defendants**

35.    Defendant HAS Brands, LLC operates an Amazon storefront (Merchant ID A1L773GETBGUZ2) and maintains a mailing address at 519 8th Ave., Room 800, New York, NY 10018. Its lead principal is Oren Halali.

36.    Defendant Tejeda Inc. is a California corporation (Entity No. 5251860) with its principal place of business at 415 Hall Road, # 13, Royal Oaks, CA 95076.

37.    Defendant Tejeda Inc. operates under the d/b/a "Phoenix International Distribution" and a/k/a "PHX International Distribution."

38.    Defendant Leonel Tejeda is an individual and California resident with an address at 16231 Apricot Lane, Royal Oaks, CA 95076.

39.    Leonel Tejeda is the Chief Executive Officer and Director of Tejeda Inc., as reflected in the California Secretary of State records filed on July 20, 2024.

1    40.    On information and belief, Leonel Tejeda controls and directs the

2  operations of Tejeda Inc. d/b/a Phoenix International Distribution.

3    41.    Defendant Johny Sharma is an individual and a licensed commercial

4  truck driver residing in Fremont, California. Sharma was the driver responsible for

5  transporting SKY & SOL products in Shipment #26, and at the same time the

6  products went missing, Sharma himself disappeared.

7    42.    The Enterprise is a de facto joint venture and RICO enterprise

8  comprised of Tejeda Inc. d/b/a Phoenix International Distribution, Leonel Tejeda,

9  HAS Brands, LLC, Johny Sharma, and Does 1-10.

10    43.    The Enterprise operates primarily from California through Tejeda

11  Inc.'s business operations.

12    44.    The true names and capacities of Defendants sued herein as Does 1

13  through 10, inclusive, are unknown at this time to Plaintiffs, and Plaintiffs therefore

14  sue said Defendants by fictitious names pursuant to section 474 of the California

15  Code of Civil Procedure. Plaintiffs will amend this Complaint to allege the true

16  names and capacities of the Defendants when the same have been ascertained.

17  Plaintiffs are informed and believe, and based thereon allege, that each of the

18  Defendants is responsible in some manner for the occurrences, acts and omissions

19  alleged herein, and that Plaintiffs' damages have been, and will be, proximately

20  caused by their conduct.

21    45.    In doing the acts and things described below, Plaintiffs are informed

22  and believe, and based thereon allege, that Defendants, and each of them, were the

23  agents, employees, partners, joint venturers, co-conspirators, owners, principals,

24  and/or employers of the remaining Defendants, and each of them, and are, and at all

25  times herein mentioned were, acting within the course and scope of that agency,

26  employment, partnership, conspiracy, ownership or joint venture.  Plaintiffs are

27  further informed and believe, and based thereon allege, that the acts and things

28  described below were known to, authorized and/or ratified by the officers, directors,

1  and managing agents of Defendants, and each of them.

2      46.    On information and belief, at all times mentioned herein, all

3  Defendants, and each of them, unlawfully conspired and acted in concert and

4  participated with one or more of the remaining Defendants, in committing and

5  performing the acts and conduct alleged herein, all to the damage and detriment of

6  Plaintiffs.

7              **V.    FACTUAL ALLEGATIONS**

8  **Plaintiffs' Trademark Rights and Brand Development**

9      47.    Since June 2023, Plaintiffs have invested substantial resources in

10  developing the SKY & SOL brand, including product development, FDA

11  compliance, marketing campaigns, and building consumer trust.

12      48.    Plaintiffs have established exclusive distribution channels and

13  authorized retailer networks to maintain quality control and brand integrity.

14      49.    The SKY & SOL mark identifies and distinguishes Plaintiffs' products

15  in the marketplace, and consumers have come to associate the mark exclusively with

16  Plaintiffs' high-quality, FDA-compliant sunscreen and skincare products.

17      50.    Plaintiffs' reputation depends on maintaining control over product

18  quality, storage conditions, and distribution channels, as sunscreen products require

19  proper handling to remain effective and safe.

20  **Timeline of Key Events**

21      51.    In May, Plaintiffs, working with their product supplier, helped arrange

22  for the transport of Shipment #26, which consisted of more than 120,000 units of

23  SKY & SOL sunscreen and skincare products, all owned by Plaintiff Delta

24  Ecommerce.

25      52.    On or about July 7, 2025, the shipment was stolen during transport in

26  California and reported to the Whittier, California, Police Department, Case No. 25-

27  902393. (Whittier Police Department provides law enforcement services for the City

28  of Santa Fe Springs, California.) (Ex. A.)

53.     On or about July 9, 2025, stolen SKY & SOL products began appearing on Amazon.

54.     On or about July 19, 2025, Plaintiffs discovered HAS Brands' unauthorized listings of stolen SKY & SOL products on Amazon and initiated brand protection enforcement efforts.

55.     On or about July 22, 2025, Plaintiffs' brand protection agents filed infringement reports with Amazon Registry, resulting in the initial removal of HAS Brands' unauthorized listings.

56.     HAS Brands quickly appealed this initial removal and was quickly reinstated by Amazon.

57.     On or about July 22, 2025, Phoenix posted a NixBot promo: "Sky & Sol SPF 50 — $10/unit — 136% ROI — hot seller on Amazon." (Ex. B) NixBot is an AI-driven chatbot used by Phoenix to support customers by facilitating order collection, invoicing, and answering logistics-related questions. It can be accessed via a widget embedded on Phoenix's web pages.

58.     On or about July 30, 2025, Tejeda Inc. d/b/a Phoenix issued Invoice 1901 to HAS Brands for 1,200 units at $10 (below $16 wholesale). (Ex. C)

59.     On or about August 9, 2025, Plaintiffs filed a report with Amazon's Retail Crime Unit regarding HAS Brands' sales of stolen SKY & SOL products, and within 48 hours Amazon had removed HAS Brands from its marketplace.

60.     HAS Brands submitted fraudulent appeals to Amazon in response to Plaintiffs' infringement reports.

61.     On August 12, 2025, HAS Brands' attorney sent a threat letter to Plaintiffs, disputing Plaintiffs' reports of theft and threatening to sue them for defamation. Subsequently, on August 21, HAS Brands attorney sent Plaintiffs a draft complaint alleging defamation and various other claims. (Ex. D - copies of these two attorney letters).

**A.      Theft by Sharma and Diversion of SKY & SOL Products**

62.     This section details how Defendants acquired more than 120,000 units of SKY & SOL products through theft and diversion in California, then trafficked them across state lines.

63.     Shipment #26 consisted of more than 120,000 units of SKY & SOL SPF 50 sunscreen and SKY & SOL skincare products, with a value of more than $4,000,000. (See Ex. E - PSI Summary Report and Packing List, documenting the contents of Shipment #26).

64.     Shipment #26 passed pre-shipment inspection in Guangzhou, China, and quality control photos confirmed legitimate product packaging, case labels, and barcodes.

65.     On or about July 7, 2025, Shipment #26 was diverted and stolen in California while en route to Delta Ecommerce's warehouse in Missouri.

66.     Instead of delivering the shipment to Plaintiffs' Missouri warehouse, Sharma diverted the load and, on information and belief, sold it to Tejeda Inc. d/b/a Phoenix International Distribution, in California.

67.     Defendant Sharma, the licensed driver identified on the bill of lading, was responsible for transporting the shipment.

68.     The bill of lading, trucking company report, and broker communications document Sharma's responsibility and the subsequent disappearance of Shipment #26. (See Ex. F).

69.     Delta Ecommerce reported the theft to the Whittier Police Department towards the end of July, 2025 (Ex A).

70.     Delta Ecommerce filed an insurance claim on or before August 4, 2025. (Ex G.).

71.     Each SKY & SOL unit bears unique GTINs, SKUs, lot numbers, and expiration dates.

72.    To confirm the theft and trafficking, Delta Ecommerce conducted test purchases from both Phoenix International Distribution and HAS Brands.

73.    These test buys revealed that both companies were selling products with the same unique identifiers (GTINs, SKUs, lot numbers, and expiration dates) as the products stolen from Shipment #26.

74.    Delta later matched these identifiers against those appearing in HAS Brands' Amazon listings and in various Phoenix invoices.

75.    The matches confirmed that the stolen products were being trafficked by Defendants.

76.    Tejeda Inc. d/b/a Phoenix issued invoices offering SKY & SOL sunscreen products at $10 per unit, a price far below Plaintiffs' wholesale price of $16 per unit.

77.    From its California base, Phoenix advertised the stolen SKY & SOL products to resellers across the United States, including in California.

78.    Phoenix's emails and chats confirmed that the goods were the SKY & SOL sunscreen products with matching lot numbers and expiration dates.

79.    Phoenix offered to ship the SKY & SOL sunscreen products directly into Amazon fulfillment centers. (Ex. C).

80.    The steep discount at which Defendant Tejeda Inc. sold the SKY & SOL products demonstrates the even lower prices Phoenix paid for these products and its knowledge that these products had been stolen.

81.    On information and belief, Phoenix conceals aspects of its ownership through foreign domain website registrations.

82.    Phoenix continued to sell the stolen SKY & SOL products despite being specifically notified that those products had been stolen.

83.    Plaintiffs' test purchases from Phoenix confirmed that Phoenix was selling products stolen from Shipment #26, as evidenced by matching product identifiers. (Ex. H).

84.    Several companies that initially purchased from Phoenix ceased sales after notice and proof from Plaintiffs that the SKY & SOL products they had been selling were stolen, demonstrating that legitimate and responsible businesses recognized that the products had been stolen.

85.    HAS Brands, however, continued to purchase and resell the stolen goods to consumers on Amazon despite clear knowledge of their illicit origin.

**C.    HAS Brands' Role: The Amazon Storefront**

86.    This section demonstrates how HAS Brands operated as the Enterprise's Amazon front, exploiting Amazon's platform to list stolen products and filing fraudulent appeals to maintain those listings despite clear notice of their illicit origin.

87.    Acting as Phoenix's Amazon storefront, HAS Brands listed the stolen SKY & SOL products under its seller ID A1L773GETBGUZ2, using Amazon's marketplace to sell the stolen products.

88.    Plaintiffs' test purchases from HAS Brands confirmed that HAS Brands was selling the same stolen products from Shipment #26, as evidenced by matching product identifiers.

89.    HAS Brands falsely claimed to Amazon that it was legally authorized to sell SKY & SOL products.

90.    Amazon initially reinstated the listings based on HAS Brands' misrepresentations.

91.    When Plaintiffs sought again to stop HAS Brands from selling its stolen products, HAS Brands again made false claims to Amazon falsely claiming that it was authorized to sell those products.

92.    This second attempt by HAS Brands to continue selling the stolen SKY & SOL products failed, and Amazon permanently removed HAS Brands' SKY & SOL listings.

93.    On August 12, 2025, HAS Brands' attorney, Mark Berkowitz, sent a letter to Plaintiffs accusing Plaintiffs of "bombarding Amazon with bogus reports" and threatening to sue Plaintiffs in New York for defamation, among other claims. Subsequently, on August 21, HAS Brands lawyer sent Plaintiffs an email with an attached draft complaint saying that he would be filing it on August 22 (Ex. D).

### D.    Consumer Deception and False Advertising

94.    This section shows how Defendants' sales caused consumer confusion on Amazon's platform regarding product authenticity, warranty coverage, and safety, creating public health risks and marketplace confusion.

95.    Only Plaintiffs may truthfully represent that SKY & SOL products are FDA-compliant, covered by Plaintiffs' warranty, subject to Plaintiffs' quality control standards, and sourced through Plaintiffs' authorized distribution channels.

96.    HAS Brands' Amazon listings falsely implied that it was an authorized reseller of SKY & SOL products. This deceived consumers into believing the products carried SKY & SOL warranties and quality protections.

97.    Defendants' unauthorized sales create likelihood of confusion as to source, sponsorship, affiliation, and approval, causing consumers to mistakenly believe that Defendants are authorized by or affiliated with Plaintiffs.

98.    This consumer confusion directly harms Plaintiffs' trademark rights, and the goodwill Plaintiffs have developed in the SKY & SOL mark through years of careful brand development and quality control.

99.    Plaintiffs received communications reflecting consumer confusion and concern over the authenticity of SKY & SOL products purchased from HAS Brands and Phoenix. Confusion is also inherent whenever unauthorized resellers traffic in diverted goods.

100.    Defendants' unauthorized sales created a likelihood of confusion regarding authorization, warranties, and quality control. Consumers were misled into believing Defendants were authorized sellers. Such confusion is inherent

whenever unauthorized resellers traffic in diverted goods outside Plaintiffs' quality-control system.

101. Plaintiffs have built a strong reputation based on the quality and effectiveness of their SKY & SOL products, which require proper storage and handling to remain effective and safe. Sunscreen products are particularly sensitive to temperature, humidity, and storage conditions, and must be handled through channels approved and monitored by Plaintiffs to ensure product integrity and consumer safety.

102. Sunscreen products are regulated by the FDA as over-the-counter drugs. Federal regulations require that such products be stored and transported under conditions that preserve their safety and effectiveness. Unauthorized diversion prevents Plaintiffs from ensuring compliance with these requirements.

103. Diverted or mishandled goods pose health risks to consumers who rely on effective sunscreen protection, further amplifying the public interest harm.

### E.    The Enterprise and the RICO Violations

104. This section establishes how the Enterprise operated as a joint enterprise engaged in theft, trafficking in stolen goods, sale to resellers, sale to unsuspecting consumers, and misrepresentations to Amazon, with specific predicate acts of wire fraud, mail fraud, and trafficking in stolen property spanning three months.

105. Phoenix, Tejeda Inc., Leonel Tejeda, HAS Brands, and Johny Sharma operated as a joint venture and RICO enterprise to traffic stolen SKY & SOL products.

106. Johny Sharma diverted the SKY & SOL Products and sold them to Phoenix.

107. Phoenix marketed, supplied and sold the SKY & SOL products to multiple buyers (including, on information and belief, to Defendant HAS Brands, LLC), and issued invoices reflecting such sales.

108.   On information and belief, Defendant HAS Brands, purchased SKY & SOL products from Phoenix at unrealistically low prices, operated the Amazon storefront, made fraudulent statements to Amazon, and sold the goods to consumers while knowing that the goods had been stolen and that HAS Brands was not an authorized reseller of SKY & SOL products.

109.   Phoenix targeted Amazon resellers, while HAS Brands filed fraudulent appeals with Amazon to keep the SKY & SOL stolen products listed with Amazon, all the while selling those products over the internet.

110.   Payments flowed between the entities within the Enterprise via interstate wires.

111.   The entities and individuals that created and comprise the Enterprise would communicate with each other over the wires.

112.   The Enterprise's conduct spanned at least from early July 2025 through the date of the filing of this Amended Complaint.

113.   The Enterprise's conduct involved multiple predicate acts of wire fraud, mail fraud, and trafficking in stolen property.

**1.    RICO Enterprise**

114.   Phoenix, HAS Brands and Johny Sharma formed a de facto enterprise under 18 U.S.C. § 1961(4).

115.   This was an ongoing organization with a common purpose of trafficking stolen SKY & SOL products through Amazon's marketplace.

116.   The Enterprise operated through a division of labor: Johny Sharma stole the SKY & SOL products, Phoenix sourced and wholesaled the stolen SKY & SOL products, while HAS Brands managed the Amazon storefront and the sales to consumers.

117.   The Enterprise conducted its affairs through a pattern of racketeering activity designed to: (a) acquire stolen SKY & SOL inventory; (b) disguise the illicit nature of the goods; (c) list and sell stolen products on Amazon's marketplace; (d)

1  sustain sales when challenged by filing fraudulent appeals; and (e) profit from the
2  sale of stolen goods while evading detection.

3  **2.**  **Pattern of Racketeering Activity**

4  118.  The Enterprise's pattern of racketeering activity consisted of the
5  following predicate acts under 18 U.S.C. § 1961(1):

6  119.  Wire Fraud (18 U.S.C. § 1343). Phoenix emailed its invoices for its sale
7  of stolen SKY & SOL products, misrepresenting source legitimacy.

8  120.  Transport of Stolen Property / Mail Fraud (18 U.S.C. §§ 2314, 1341).
9  Phoenix and HAS Brands shipped stolen SKY & SOL products via couriers in
10  interstate commerce to execute the scheme. There were multiple such shipments
11  from both Phoenix and HAS Brands.

12  121.  Wire Fraud. HAS Brands electronically submitted multiple false
13  authorization appeals to Amazon's Seattle dispute system.

14  122.  Interstate Transportation/Trafficking of Stolen Property (18 U.S.C. §§
15  2314, 2315). Defendants transported, received, and sold stolen SKY & SOL
16  products more than $4,000,000 in value across state lines. Defendants both paid for
17  these goods over the wire and accepted payment for these goods over the wire.

18  **3.**  **Conduct of the Enterprise's Affairs**

19  123.  Defendants conducted the affairs of the Enterprise through a pattern of
20  racketeering activity.

21  124.  Phoenix knowingly acquired stolen SKY & SOL inventory from
22  Sharma, who diverted the shipment in California.

23  125.  Phoenix marketed the stolen goods through its NixBot platform,
24  specifically targeting Amazon resellers.

25  126.  HAS Brands created and managed Amazon storefronts to retail the
26  stolen products to consumers.

27  127.  Phoenix and HAS Brands coordinated pricing, shipping, and payment
28  arrangements through interstate communications.

128.    HAS Brands filed false appeals with Amazon when listings were removed.

129.    The Defendant entities and individuals that created and comprise the Enterprise benefitted from the profits derived from the illegal sales while concealing the stolen nature of the goods from Amazon and consumers.

130.    HAS Brands, on its own behalf and on behalf of the Enterprise utilized legal threats to deter Plaintiffs from asserting their property rights.

131.    The scheme, already spanning at least two months at the time of filing, demonstrates a threat of continued repetition absent judicial intervention.

132.    The pattern involved multiple separate predicate acts occurring in multiple states – California, New York, and Washington (Amazon's location), as well as the sale of the stolen SKY & SOL goods all over the United States.

133.    This demonstrates continuity and relationship among the predicate acts.

134.    Through this arrangement, Phoenix acted as wholesale supplier and HAS Brands operated as the Amazon storefront.

135.    Payments flowed between them via interstate wire transfers and mail shipments.

136.    These acts were not isolated, but continuous from early July, 2025, through at least the filing of this Amended Complaint.

137.    The acts constitute a continuing pattern of racketeering activity that threatens ongoing harm to Plaintiffs and the marketplace.

# VI.    CLAIMS FOR RELIEF

## COUNT I

### Unfair Competition and False Designation of Origin

### (15 U.S.C. § 1125(a))

138.    By misrepresenting themselves as authorized SKY & SOL sellers and using Plaintiffs' trademarks and trade dress, Defendants violated the Lanham Act's unfair competition provisions.

1    139.   Plaintiffs incorporate by reference all prior paragraphs.

2    140.   Plaintiffs own common law trademark rights in "SKY & SOL" through
3  continuous use since June 1, 2023, and have a pending federal trademark application.

4    141.   Plaintiffs' SKY & SOL mark is distinctive and has acquired secondary
5  meaning through extensive marketing, substantial sales volumes, and consumer
6  recognition in the competitive sunscreen and skincare markets.

7    142.   Defendants' use of Plaintiffs' marks and trade dress created a likelihood
8  of confusion as to source, sponsorship, affiliation, or approval.

9    143.   Defendants presented themselves as authorized sellers, creating a false
10  designation of origin.

11    144.   This conduct deceived consumers and harmed Plaintiffs' goodwill.

12    145.   Defendants misrepresented the nature, characteristics, and qualities of
13  the goods by selling unauthorized products without proper authorization.

14    146.   These misrepresentations included false claims about source, warranty
15  coverage, and compliance with quality controls.

16    147.   The first sale doctrine does not apply because Defendants never lawfully
17  purchased the SKY & SOL products from Delta Ecommerce or any authorized
18  distributor.

19    148.   The products were stolen/diverted before any legitimate sale occurred.

20    149.   Plaintiffs are entitled to injunctive relief and damages under 15 U.S.C. §
21  1125(a).

22                              **<u>COUNT II</u>**

23              **False Advertising (15 U.S.C. § 1125(a)(1)(B))**

24    150.   Plaintiffs incorporate by reference all prior paragraphs.

25    151.   Defendants falsely advertised themselves as authorized SKY & SOL
26  sellers on Amazon, making material misrepresentations that diverted sales and
27  harmed Plaintiffs' brand.

28

1     152. Defendants made false and misleading statements in commercial

2 advertising and promotion.

3     153. Defendants represented themselves as authorized SKY & SOL sellers on

4 Amazon marketplace when they were not authorized.

5     154. These false representations were material to consumers' purchasing

6 decisions.

7     155. The representations included implied claims about warranty coverage,

8 quality control compliance, and authorized seller status.

9     156. Defendants' false advertising occurred in interstate commerce through

10 Amazon's national marketplace.

11     157. The advertising was designed to influence purchasing decisions and

12 diverted sales from Plaintiffs.

13     158. As a direct and proximate result, Plaintiffs suffered diverted sales,

14 brand harm, lost business opportunities, and other damages.

15     159. Plaintiffs are entitled to injunctive relief and damages under 15 U.S.C.

16 § 1125(a)(1)(B).

17 **COUNT III**

18 **California Penal Code § 496 (Civil Theft)**

19     160. Defendants knowingly received, purchased, concealed, and sold stolen

20 SKY & SOL products in violation of California Penal Code § 496(a).

21     161. In *Siry Investment, L.P. v. Farkhondehpour*, 13 Cal.5th 333 (2022), the

22 California Supreme Court held that Penal Code § 496(c)'s treble damages and

23 attorneys' fees remedy applies not only to "classic fencing" cases but also to business

24 disputes where property is obtained "in any manner constituting theft," provided that

25 criminal intent is shown.

26     162. Plaintiffs incorporate by reference all prior paragraphs, which

27 demonstrate that Defendants acted with the requisite criminal intent, not merely

28 inadvertence or breach of contract.

163.    Defendants bought, received, concealed, and sold personal property that they knew was stolen, as evidenced by (a) invoices offering goods at below-market pricing immediately after the theft, (b) test purchases showing identical lot numbers to the stolen shipment, and (c) repeated sales and appeals after being specifically notified of the theft.

164.    Specifically, Tejeda Inc. d/b/a Phoenix International Distribution received the stolen Shipment #26 and sold large volumes of stolen SKY & SOL product.

165.    HAS Brands knowingly purchased and resold the stolen goods, continuing their sales even after explicit notice of the theft.

166.    The facts alleged, including Defendants' continuation of sales after police reports, insurance claims, and written notice, demonstrate that Defendants acted deliberately and with careful planning, reflecting the criminal intent required for liability under Penal Code § 496. This is not an "ordinary commercial dispute," but intentional trafficking in stolen goods.

167.    Defendants' conduct violated California Penal Code § 496(a).

168.    California Penal Code § 496(c) provides that any person who has been injured by a violation of § 496(a) may bring an action for three times the amount of actual damages.

169.    Plaintiffs suffered actual damages more than $4,000,000 from the theft and trafficking of their property.

170.    Plaintiffs are entitled to treble damages totaling at least $12,000,000, plus attorney fees and costs to the extent not duplicative of other treble damage remedies sought herein.

## COUNT IV

### Conversion (California Common Law)

171.    Plaintiffs incorporate by reference all prior paragraphs.

172.   By knowingly taking possession of stolen Shipment #26 and reselling it on Amazon, Defendants committed conversion under California law.

173.   Plaintiffs owned and had the right to possess the products in Shipment #26.

174.   Defendants wrongfully exercised dominion and control over these goods.

175.   Defendants acquired the goods through theft/diversion in California and sold them without authorization.

176.   Plaintiffs were thereby deprived of their property and business opportunities.

177.   As a direct and proximate result, Plaintiffs have suffered damages more than $4,000,000.

## COUNT V

### Trespass to Chattels (California Common Law)

178.   Plaintiffs incorporate by reference all prior paragraphs.

179.   Defendants intentionally interfered with Plaintiffs' personal property by wrongfully taking possession of and exercising control over stolen SKY & SOL products.

180.   Plaintiffs owned personal property consisting of more than 120,000 of SKY & SOL products in Shipment #26.

181.   Defendants intentionally interfered with Plaintiffs' possessory rights by taking possession of the stolen goods.

182.   Defendants' interference was substantial, as they deprived Plaintiffs of the use and possession of valuable inventory worth more than $4,000,000.

183.   Defendants had no right or privilege to possess, use, or sell Plaintiffs' property.

184.   Defendants' conduct was a substantial factor in causing harm to Plaintiffs' property interests.

185.   As a direct and proximate result, Plaintiffs suffered damages including loss of inventory, diverted sales, and harm to business reputation.

## COUNT VI

### California Unfair Competition

### (Bus. & Prof. Code §§ 17200 et. seq.)

186.   Plaintiffs incorporate by reference all prior paragraphs.

187.   Defendants engaged in unlawful, unfair, and fraudulent business practices by trafficking stolen goods and misrepresenting their authorization to sell SKY & SOL products.

188.   Defendants engaged in "unlawful" business practices by violating California Penal Code § 496 (receiving stolen property), federal wire fraud statutes, and trademark laws.

189.   Defendants engaged in "unfair" business practices by competing against Plaintiffs using stolen inventory, giving them an improper advantage in the marketplace.

190.   Defendants engaged in "fraudulent" business practices by misrepresenting themselves to consumers and Amazon as authorized SKY & SOL resellers.

191.   Defendants' conduct occurred in the course of business and affected the public interest by exposing consumers to potentially compromised sunscreen products and undermining marketplace integrity.

192.   Plaintiffs have standing as competitors who have been injured by Defendants' unfair competition.

193.   Plaintiffs lost sales and customers directly due to Defendants' unlawful conduct.

194.   Plaintiffs are entitled to injunctive relief and restitution under Business & Professions Code § 17203.

## COUNT VII

### California False Advertising

### (Bus. & Prof. Code §§ 17500 et seq.)

195.   Plaintiffs incorporate by reference all prior paragraphs.

196.   Defendants violated California's False Advertising Law by making false and misleading statements about their authorization to sell SKY & SOL products.

197.   Defendants made statements in their advertising, marketing, and sales materials that were untrue or misleading.

198.   Specifically, Defendants represented themselves as authorized SKY & SOL sellers when they had no such authorization.

199.   Defendants' Amazon listings and marketing materials falsely implied legitimate source, warranty coverage, and quality control compliance.

200.   These statements were made in connection with the sale of goods to consumers.

201.   The statements were material to consumers' purchasing decisions.

202.   Defendants knew or should have known that their representations were false and misleading.

203.   Defendants' false advertising was designed to promote sales and divert customers from authorized channels.

204.   As a direct result, Plaintiffs suffered damages including diverted sales, brand harm, and lost business opportunities.

205.   Plaintiffs are entitled to injunctive relief, restitution, and civil penalties under Business & Professions Code § 17500.

## COUNT VIII

### Civil RICO (18 U.S.C. § 1962(c))

206.   Defendants operated a criminal enterprise through multiple predicate acts of wire fraud, mail fraud, and trafficking in stolen property, causing more than $4,000,000 in damages to Plaintiffs.

1    207.   Plaintiffs incorporate by reference all prior paragraphs.

2    208.   Defendants conducted the affairs of an enterprise engaged in interstate

3    commerce through a pattern of racketeering activity.

4    209.   The racketeering activity included wire fraud (18 U.S.C. § 1343), mail

5    fraud (18 U.S.C. § 1341), and trafficking in stolen property (18 U.S.C. § 2314).

6    210.   Specific   predicate   acts   include   Phoenix's   invoices   transmitted

7    electronically.

8    211.   Additional predicate acts include HAS Brands' false appeals submitted

9    electronically to Amazon's Seattle systems.

10    212.   Further predicate acts include FedEx interstate shipments of stolen goods

11    and various payments made and received over the wire.

12    213.   As a direct and proximate result, Plaintiffs lost more than 120,000 units

13    of SKY & SOL products valued at more than $4,000,000.

14    214.   Plaintiffs suffered diverted sales, brand harm, and investigation costs.

15    215.   Plaintiffs are entitled to treble damages, costs, and attorneys' fees

16    pursuant to 18 U.S.C. § 1964(c) to the extent not duplicative of other treble damage

17    remedies sought herein.

## COUNT IX

### RICO Conspiracy (18 U.S.C. § 1962(d))

20    216.   Plaintiffs incorporate by reference all prior paragraphs.

21    217.   Defendants conspired to operate their criminal enterprise, with evidence

22    including coordinated invoices, targeted marketing, and joint appeals to protect their

23    scheme.

24    218.   Defendants agreed and conspired to participate in the racketeering

25    enterprise.

26    219.   Evidence includes Phoenix's marketing of SKY & SOL to HAS Brands.

27    220.   Evidence includes HAS Brands' filing of fraudulent appeals to protect

28    the conspiracy.

221.  Each Defendant knowingly agreed to participate with intent to traffic stolen SKY & SOL products.

222.  Phoenix's cut-rate pricing indicated knowledge of illicit sourcing.

223.  HAS Brands filed fraudulent appeals to Amazon claiming authorization they knew they lacked.

224.  Both Phoenix and HAS Brands are believed to have continued coordination even after being informed the products were stolen.

225.  Defendants are jointly and severally liable for the damages caused by this conspiracy.

## COUNT X

### Intentional Interference with Prospective Economic Advantage

### (California Common Law)

226.  By flooding Amazon with stolen product and undercutting authorized channels, Defendants intentionally derailed Plaintiffs' expected customer relationships.

227.  Plaintiffs incorporate by reference all prior paragraphs.

228.  Plaintiffs had reasonable expectations of future economic relationships with consumers on Amazon. The identities of these consumers can be determined through discovery.

229.  Defendants knew of these prospective economic relationships through their targeting of the SKY & SOL brand specifically.

230.  Defendants intentionally interfered with these prospective economic relationships by trafficking stolen goods and diverting consumers on Amazon.

231.  Defendants used wrongful means, including theft, fraud, and misrepresentation.

232.  Defendants' interference was a substantial factor in disrupting Plaintiffs' prospective economic advantage.

233.   Plaintiffs suffered economic harm including lost sales, damaged reputation, and diminished business opportunities.

234.   The interference was not justified by legitimate competitive interests given that it was based on criminal conduct.

## COUNT XI

### Unjust Enrichment (California Common Law)

235.   Defendants unjustly profited from trafficking Plaintiffs' stolen property and must disgorge their ill-gotten gains.

236.   Plaintiffs incorporate by reference all prior paragraphs.

237.   Defendants received benefits (profits from stolen goods) at Plaintiffs' expense.

238.   Defendants' retention of these benefits is unjust given that they were derived from stolen property.

239.   Defendants had knowledge that the benefits were derived from wrongful conduct.

240.   It would be inequitable for Defendants to retain these ill-gotten gains.

241.   Plaintiffs are entitled to disgorgement of all profits Defendants obtained from the unauthorized sale of SKY & SOL products.

## COUNT XII

### Declaratory Judgment (28 U.S.C. §§ 2201, 2202)

242.   An actual controversy exists regarding Defendants' claimed authority to sell SKY & SOL products, requiring judicial declaration to prevent continuing harm.

243.   Plaintiffs incorporate by reference all prior paragraphs.

244.   An actual controversy exists between Plaintiffs and Defendants regarding Defendants' claimed authority to sell SKY & SOL products.

245.   Plaintiffs contend, and Defendants deny, that Defendants are not authorized sellers of any SKY & SOL products, let alone stolen SKY & SOL products.

246.   Plaintiffs seek a declaratory judgment confirming that Defendants have **no** authorization or right to sell SKY & SOL products.

247.   This declaration is necessary to clarify the parties' rights, prevent further consumer deception, and avoid continuing harm to Plaintiffs.

## VI.   DAMAGES

248.   The theft of Shipment #26 alone caused a direct loss to Plaintiffs of more than $4,000,000.

249.   Plaintiffs have already incurred substantial legal fees, investigation costs, and enforcement expenses as a result of Defendants' misconduct, and will continue to incur such costs until Defendants' unlawful conduct is enjoined.

250.   As a direct and proximate result of Defendants' misconduct, Plaintiffs have suffered:

251.   **Loss of Stolen Inventory**: More than $4,000,000 from Shipment #26.

252.   **Diverted Sales**: Additional lost revenue from consumers who purchased SKY & SOL products from Defendants instead of from authorized SKY & SOL channels, depriving Plaintiffs of retail margins and disrupting their authorized distribution network.

253.   **Brand Harm**: Significant damage to the SKY & SOL brand reputation caused by unauthorized discount resales, including consumer confusion about authorization and association with stolen goods.

254.   **Investigation and Enforcement Costs**: Substantial costs already incurred and continuing to be incurred for legal fees, private investigation, brand protection monitoring, law enforcement cooperation, and enforcement actions against unauthorized sellers.

255.   **Lost Business Opportunities**: Harm to relationships with authorized distributors and retailers, and lost opportunities for brand expansion due to marketplace confusion and reputational damage.

256.  **Ongoing Monitoring Costs**: Continuing expenses for brand protection services and monitoring to prevent future unauthorized sales.

257.  Plaintiffs seek to recover their actual damages, estimated at more than $4,000,000, together with additional losses including diverted sales, monitoring costs, and brand harm. Plaintiffs further seek treble damages and other enhanced remedies under the Lanham Act, RICO, and California Penal Code § 496, to the maximum extent permitted by law, but not duplicative across statutes.

258.  Absent injunctive relief, Plaintiffs must continue incurring substantial brand-protection and marketplace-monitoring costs to mitigate consumer deception and public-health risks from diverted, potentially degraded sunscreen.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

**A.    Injunctive Relief**

1.    A temporary restraining order and preliminary injunction immediately enjoining Defendants from:

2.    Trafficking, selling, offering for sale, or distributing any SKY & SOL products without written authorization;

3.    Using Plaintiffs' trademarks, trade names, or trade dress in any manner;

4.    Misrepresenting their relationship with or authorization from Plaintiffs;

5.    Filing false or fraudulent appeals, and from making false representations to Amazon or other selling platforms;

6.    Further interfering with Plaintiffs' existing and prospective business relationships;

7.    A permanent injunction after trial incorporating the same prohibitions.

**B.    Monetary Relief**

8.    An accounting and disgorgement of all Defendants' revenues and profits derived from unauthorized sales of SKY & SOL products;

9.    Actual damages in an amount to be proven at trial, more than $4,000,000, including the full retail value of stolen inventory, diverted sales, and investigation costs;

10.    Treble damages under RICO, the Lanham Act, or California Penal Code § 496(c), to the maximum extent permitted by law but not duplicative across statutes.

11.    Restitution and disgorgement under California Business & Professions Code §§ 17200, et seq. and 17500, et seq.

12.    Pre- and post-judgment interest at the maximum rate allowed by law.

**C.    <u>Equitable Relief</u>**

13.    An order requiring Defendants to deliver to Plaintiffs all infringing/unauthorized SKY & SOL goods, packaging, promotional materials, and any materials bearing Plaintiffs' trademarks.

14.    Asset preservation orders as necessary to prevent dissipation of Defendants' unlawful profits.

15.    An order imposing a constructive trust over Defendants' revenues from unauthorized sales of SKY & SOL products and freezing Defendants' assets sufficient to satisfy any judgment in this case.

16.    An *ex parte* seizure order under 15 U.S.C. § 1116(d) authorizing seizure of infringing goods and related records in Defendants' possession, custody, or control.

17.    An order directing Amazon to (i) disable any listings offering SKY & SOL products by Defendants, (ii) preserve and produce seller account records, and (iii) hold all disbursements associated with such sales pending further order.

18.    Expedited discovery under Fed. R. Civ. P. 26(d)(1), including third-party subpoenas to Amazon, payment processors, and carriers.

19.    A preservation order requiring Defendants and Amazon to preserve all listing data, appeal records, communications, financial records, and other relevant documents.

**D.** **Fees and Costs**

20.    Attorneys' fees and costs pursuant to 18 U.S.C. § 1964(c), 15 U.S.C. § 1117, and California Penal Code § 496(c).

21.    Such other and further relief as the Court deems just and proper.


Dated: August 22, 2025            HARRIS SLIWOSKI LLP

By:    *Timothy L. Alger*
       Timothy L. Alger

       *Attorneys for Plaintiffs*
       Delta Ecommerce LLC d/b/a Sky and Sol
       and Max Medroso


## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Delta Ecommerce LLC d/b/a Sky and Sol and Max Medroso hereby demands a trial by jury on all issues so triable.


Dated: August 22, 2025            HARRIS SLIWOSKI LLP

By:    *Timothy L. Alger*
       Timothy L. Alger

       *Attorneys for Plaintiffs*
       Delta Ecommerce LLC d/b/a Sky and Sol
       and Max Medroso

# Exhibit A

**WHITTIER POLICE DEPARTMENT**
**SERVING SANTA FE SPRINGS**
**11576 TELEGRAPH ROAD**
**SANTA FE SPRINGS, CA 90670**

25 - 962393 .

Classification of Incident

R-1ULENT    # 746

File Number                                    Date of Report

TO GIVE OR RECEIVE ADDITIONAL INFORMATION CONCERNING
THIS INCIDENT CALL: (562) 409-1850

|  |  |
|---|---|
|  | ( ) TRAFFIC DETAIL |
| ( ) | ( ) DETECTIVE BUREAU |
| ( ) | ( ) RECORDS BUREAU |
| ( ) | ( ) COURT OFFICER |
| ( ) | ( ) _____ |

IF MISSING PERSON RETURNS, or you learn his/her WHEREABOUTS, please notify THIS DEPARTMENT.

RECOVERY OF PROPERTY: Promptly report recovery of property if the recovery was not made by this Department. Notification concerning recovered property (except vehicles), or missing persons may be made by telephone.

RECOVERED VEHICLES: If you recover a vehicle other than through a law enforcement agency, you MUST make a signed report of such recovery at the nearest Sheriff's or Police Department.

RETAIN THIS FOR REFERENCE

# Exhibit B

# WHATSAPP CONVERSATION

Name: NixBot | Phoenix International
Number: +1 (831) 204-8569
Platform: Whatsapp
Date: 08/07/25



3:09

NixBot | Phoenix International

The $24 you're seeing on the public site is the suggested retail price, whereas the $10/unit I quoted is our exclusive wholesale closeout cost for qualified resellers. We source these in bulk and pass the savings on, so your landed cost per unit is $10.00. Would you like to see an Amazon profitability analysis at that cost, or shall we walk through placing an order?　2:22 PM

Yes, I want to see Amazon profitability analysis at that cost and I want to know the lead times　2:26 PM ✓✓

 **B0CYTB1BWV** 

**Product Title:** Sky and Sol Non-Toxic Natural Mineral Sunscreen SPF 50 | Safest Organic Natural Tallow & Zinc Oxide Sunblock | Reef Safe, Clean Non-Greasy

3:09

 **NixBot | Phoenix International**

mineral Sunscreen 50

2:13 PM ✓✓

 **Amazon.com : Sky and Sol Non-Toxic Natural Mineral Sunscreen SPF 50 | Safest...**
amazon.com

Here's what I found:

1. Sky and Sol Non-Toxic Natural Mineral Sunscreen SPF 50 | Safest Organic Natural Tallow & Zinc Oxide Sunblock | Reef Safe, Clean Non-Greasy Formula for Face and Body | Women and Men. 3 oz (85 g)
- Brand: Sky and Sol
- Cost: $10.00 per unit
- MOQ: 1,200 units
- ASIN: B0CYTB1BWV (https://www.amazon.com/dp/B0CYTB1BWV)
- Amazon Unit Sales: 20,000 units/month
- Amazon ROI: 136%

# WHATSAPP CONVERSATION

Name: NixBot | Phoenix International
Number: +1 (831) 204-8569
Platform: Whatsapp
Date: 08/08/25



Today

Hi, still waiting 8:04 AM ✓✓

I'm sorry for the continued delay. I'll follow up with Leo again right now and update you as soon as I hear back. In the meantime, is there anything else I can help you with? 8:04 AM

Can you qoute 40k units of SPF50 here?

May I know if is this delivery or pick up 8:05 AM ✓✓

We ship via carrier or directly to FBA—pickup isn't available. To prepare a quote for 40,000 units of the Sky and Sol SPF 50 (ASIN B0CYTB1BWV), I need two details:
1. Would you like Phoenix to provide standard FBA/WFS prep services for $0.50 per unit? (Yes/No)
2. Are you currently approved/ungated to sell this product on Amazon? (Yes/No) 8:05 AM

Yes to both questions 8:22 A



Yes to both questions    8:22 AM ✓✓

Your account is pending approval. Please keep an eye on your email for confirmation. In the meantime, feel free to ask about product offers or request profitability analyses. Let me know how I can assist!    8:23 AM

so i cannot get a quote now? I would love to prepare everything on my end now    8:23 AM ✓✓

Absolutely—you can get your numbers ready now. For 40,000 units at $10.00 each, that's $400,000. Prep at $0.50 per unit adds $20,000, for a grand total of $420,000 (MOQ is 1,200). Once your account is approved, we'll convert this into a formal order. Let me know if you need anything else in the meantime!    8:24 AM

Yes, hi can I get a quote of the everything cream? Id like to have 20k units i guess.    11:00 AM ✓✓

Which product would you like to order? Please provide the ASIN, Walmart ID, or the number from the last product list.    11:00 AM    ↓



Could you please provide the ASIN (for example, B0CYTCFN1S) or the number from the list for the Everything Cream? That way I can prepare your quote for 20,000 units.    11:02 AM

B0CYTCFN1S    11:04 AM ✓✓

For 20,000 units of the Sky and Sol Everything Cream, would you like Phoenix to provide standard FBA/WFS prep services at $0.50 per unit? And are you currently approved/ungated to sell this product on Amazon? Please answer Yes or No for each.    11:04 AM

yes if we could run up to 40k of the unit w~ can do that    11:05 AI



Would you like Phoenix to provide standard FBA/WFS prep services at $0.50 per unit? Yes or No. And are you currently approved/ungated to sell this product on Amazon? Yes or No.    11:05 AM

yes    11:06 AM ✓✓



okay can i have the quote?    11:07 AM ✓✓

Here's your quote for 40,000 units of Sky and Sol Everything Cream:

- Unit Cost: $12.00
- Quantity: 40,000
- Prep Service: $0.50 per unit (total prep cost $20,000)
- Product Cost: 40,000 × $12.00 = $480,000
- Prep Cost: $20,000
- Grand Total: $500,000

Once your account is approved, just let me know if you'd like to move forward with the order.    11:07 AM

noted, thanks    11:08 AM ✓✓

# Exhibit C

**Phoenix International**
415 Hall Rd
Royal Oaks, CA  95076-5717 USA
+18009203394
leo@phxint.xyz
https://www.phx-distribution.com



PHOENIX
*International*

**BILL TO**
JU PAIK
GREEN LINKUS LLC
546 Washington Avenue
Dumont, New Jersey  07628
United States

| INVOICE 1901 |
|---|
| **DATE** 07/30/2025 |
| **DUE DATE** 07/30/2025 |

| DATE | | DESCRIPTION | QTY | RATE | AMOUNT |
|---|---|---|---|---|---|
| | Product | Sky and Sol Non-Toxic Natural Mineral Sunscreen SPF 50 \| Safest Organic Natural Tallow & Zinc Oxide Sunblock \| Reef Safe, Clean Non-Greasy Formula for Face and Body \| Women and Men. 3 oz (85 g) | 1,200 | 10.00 | 12,000.00 |
| | Services | Prep | 1,200 | 0.00 | 0.00 |

Marketplace ID Suggestion: B0CYTB1BWV

| TOTAL DUE | $12,000.00 |
|---|---|

Seller makes no warranty of merchantability of the goods sold under these conditions of sale, and seller makes no warranty that the goods sold under these conditions of sale are fit for any particular purpose. Phoenix International, makes no representations regarding your eligibility or ability to sell or resell products on the Amazon marketplace or anywhere else, and please note that all sales are final. Thank you for your business.

By purchasing from Tejeda Inc dab Phoenix International, the Buyer acknowledges, understands, and agrees to be bound by the terms set forth herein.

# KAKAOTALK CONVERSATION

NAME: LEO - PHOENIX SALES
NAME: JURIS - CUSTOMER
PLATFORM: KAKAOTALK

2:55 📷 81° ✉ •    📶 📶 24

← 👤    (831) 348-8253    📞 ⋮

mean by this

It's 120 units per case

10 boxes



Sky and Sol Natural Mineral Sunscreen SPF50
QTY: 120 PCS
SKU: SS-MS-50-3
G TIN: 198168953099
EXP: May 15 , 2028

1  98168  95309  9

1247883759295



2:55

(831) 348-8253

Sorry, I was driving and I sent an email with the question that if this product has their own product package box for each unit.

Not sure what you mean by this

It's 120 units per case

10 boxes





Hello

It's Leo

RCS chat with (831) 348-8253

Was wondering if you are going to with the Sky and sol order

I have someone else asking

If not I will sell to someone

Else



# Exhibit D



Tarter Krinsky & Drogin
LLP
1350 Broadway
New York, NY 10018
P 212.216.8000
F 212.216.8001
www.tarterkrinsky.com

**Mark Berkowitz**
**Partner**
**212-216-1166**
**mberkowitz@tarterkrinsky.com**

August 12, 2025

*Via E-mail and Overnight Carrier*

Max Medroso
Delta Ecommerce PR LLC
308 Sherwood Terrace
Middletown, DE 19709
nikolai.r@skyandsol.org
medroso.max@gmail.com
max.m@skyandsol.org
management@triciaredulla.com

Re:  *False Amazon Complaints &*
     *Notice to Preserve Documents for Litigation*

Dear Mr. Medroso,

We are litigation counsel to HAS Brands LLC dba Amazon seller "HAS BRANDS" ("HAS"). It has come to our attention that you and your company, Delta Ecommerce PR LLC dba Sky & Sol, seek to stifle legitimate competition by filing false and defamatory statements to Amazon.com ("Amazon") regarding HAS and its products. Specifically, you have bombarded Amazon with bogus reports pertaining to Sky & Sol products sold by HAS. We are providing you with one opportunity to remedy these actions before filing suit.

For example, in late July, your employee, Mr. Hassan Ilyas, submitted a trademark report to Amazon in which he swore under penalty of perjury that the products sold by HAS were "not manufactured, packaged, or distributed by Sky & Sol."  Mr. Hassan made numerous additional defamatory and outlandish statements to Amazon regarding HAS.  As a result of this report, which was assigned Complaint ID: 18171210071, Amazon deactivated ASIN: B0CYTB1BWV.  Of course, Amazon subsequently agreed that this report was meritless and reactivated the impacted listing.

Undeterred, you and your company submitted additional reports to Amazon suggesting that the Sky & Sol products sold by HAS were stolen.  HAS's patience has ended. The foregoing false reports violate numerous state and federal laws. Specifically, you and your

2

company's actions give rise to claims for defamation and tortious interference, as well as other torts available under state business statutes and the common law.

We have been instructed by HAS to demand that you and your company:

(1) immediately cease and desist from engaging in the above activity, namely, making any further statements to Amazon regarding HAS's products or otherwise interfering in HAS's business;

(2) retract all outstanding reports through the appropriate Amazon reporting tool(s); and

(3) make an appropriate payment to HAS for the lost sales and other expenses incurred as a result of you and your company's unlawful conduct.

Please confirm that you will comply with the above demands by the close of business on **August 15, 2025.**  If we do not hear from you, HAS intends to pursue all available remedies including legal action and oppose your company's pending trademark applications to ensure that they are never registered.

We are certain that you can appreciate the seriousness of the allegations made and the need to address this matter swiftly. Therefore, **let this letter serve as notice of reasonably anticipated litigation and notification of you and your company's obligations to preserve all records and information, including all documents, e-mails and electronically stored information related to the above claims.**

*Nothing in this letter should be taken as a waiver of any of our client's rights or defenses, all of which are expressly reserved.*

Very truly yours,

TARTER KRINSKY & DROGIN LLP

*/s Mark Berkowitz*

Mark Berkowitz

---

---------- Forwarded message ---------
From: **Mark Berkowitz** <mberkowitz@tarterkrinsky.com>
Date: Fri, 22 Aug 2025 at 05:47
Subject: RE: [EXT] Re: Letter to Delta Ecommerce PR LLC dba Sky & Sol
To: Max Medroso <max.m@skyandsol.org>

Max,

We've tried to work with you and your company in good faith to resolve this matter.  However, HAS Brands cannot wait any longer.

Attached is the lawsuit we will be filing tomorrow.  If you would like to complete a

settlement/resolution please complete the steps outlined in our August 19th email by tomorrow morning (Eastern Time).


Thanks.




**Mark Berkowitz | Partner**
T: 212-216-1166 | F: 212-216-8001
mberkowitz@tarterkrinsky.com | Bio

Tarter Krinsky & Drogin LLP
1350 Broadway | New York | NY | 10018
www.tarterkrinsky.com | LinkedIn

*Crain's 2024 best places to work in NYC*

---

*Notice to Foreign IP Agents: Please copy **manageddocket@docket.tarterkrinsky.com** on prosecution matters and **ap@tarterkrinsky.com** for invoice submissions. Thank you.*

Tarter Krinsky & Drogin is fully operational in-person. However, because of anticipated delays in receiving regular mail and other deliveries, please e-mail copies of anything you send by regular mail or delivery, including issuing remittances electronically. Please contact our receptionist at reception@tarterkrinsky.com or by phone at 212-216-8000 with any questions. Thank you in advance for your courtesies.

NOTE: If regular mailing or other specific transmission type is required by terms of a contract, order or statute, please comply with those obligations and transmit the materials by the means set forth in the agreement, order or statute as well as by email.

Confidentiality Disclosure: This information in this email and attachments is confidential and intended solely for the attention and use of the named (addressee(s). This information may be subject to attorney/client privilege or may otherwise be protected by work product privilege or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

This email is an informal communication that is not meant to be legally binding upon the sender unless expressly noted to the contrary.

Tarter Krinsky & Drogin LLP, Attorneys-at-Law.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x

| | | |
|---|---|---|
| HAS BRANDS LLC, | : | **Civil Action No. _____** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **COMPLAINT AND JURY TRIAL** |
| | : | **DEMAND** |
| DELTA ECOMMERCE PR LLC; and MAX MEDROSO, | : | |
| | : | |
| | : | |
| Defendants. | : | ***Electronically Filed*** |
| | : | |

---------------------------------------------------------- x

Plaintiff HAS Brands LLC ("Plaintiff"), by and through its counsel, for its Complaint against Delta Ecommerce PR LLC dba Sky & Sol ("Sky & Sol") and Max Medroso ("Medroso") (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1.      Defendants are engaged in a criminal scheme to manipulate, fix, and control the pricing for consumer products on online marketplaces.

2.      In furtherance of the scheme, Defendants knowingly and deliberately submit false reports to online platforms, including Amazon.com, in order to prevent third parties from reselling genuine products on the marketplace at competitive prices.

3.      Defendants' nefarious actions cause consumers to pay more for common goods, undermine Amazon's competitive pricing policies, and intentionally caused harm to Plaintiff.

4.      This action seeks redress for these tortious, defamatory, and anticompetitive activities.

-1-

## PARTIES

5.      Plaintiff is a company organized and existing under the laws of the State of New York, with a place of business at 519 8TH Avenue, Room 800, New York, NY 10018-5182.

6.      On information and belief, Defendant Sky & Sol is a company organized and existing under the laws of the State of Delaware, with a principal place of business at 308 Sherwood Terrace, Middletown, DE 19709.

7.      On information and belief, Defendant Medroso is the owner of Defendant Sky & Sol and was responsible for directing the unlawful acts described herein.  Medroso can be served at 308 Sherwood Terrace, Middletown, DE 19709.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202; the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq*., including 15 U.S.C. § 1121; and 28 U.S.C. §§ 1331, 1338, and 1367.

9.      Defendants are subject to general jurisdiction in this Court because they reside in this District.

10.      Defendants are subject to specific jurisdiction in this Court, *inter alia*, because they conduct business in the District and have committed at least some of the acts complained of herein within this District.

11.      On information and belief, Defendant Sky & Sol sells large quantities of various products, including skincare products, to customers in New York, engages distributors based in New York, maintains an interactive website accessed by residents of New York, and otherwise avails itself of the privilege of doing business in the State of New York.

091295\3\180091563.v1

12.    Each of the Defendants have purposely directed their activities, including the illegal acts against Plaintiff described below, toward this District and this action arises from those activities.

13.    On information and belief, Defendants' illegal acts against Plaintiff described below were made to further Defendants' transaction of business in New York by improperly excluding a New York competitor, Plaintiff, from conducting business in New York.

14.    Venue in this District is proper under 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claims occurred in this District and the Defendants are subject to personal jurisdiction in this District.

## BACKGROUND FACTS

15.    Defendant Sky & Sol is in the business of manufacturing and distributing skincare products, including products sold under the Sky & Sol marks ("Sky & Sol Products").

16.    Defendant Sky & Sol is the owner of U.S. Trademark Application No. 99322595 for SKY & SOL.

17.    Defendant Medroso is the owner of Defendant Sky & Sol and committed the unlawful acts described herein.

18.    Plaintiff is in the business of lawfully acquiring and re-selling various consumer products for a profit.

19.    Plaintiff resells products through an Amazon storefront.

20.    Since its formation, Plaintiff has served thousands of customers through its Amazon storefront.

21.    Defendants' illegal actions have irreparably damaged, and threaten to destroy, Plaintiff's successful business.

## ONLINE MARKETPLACES

22.     Upon information and belief, Amazon is the world's largest online retailer.

23.     According to published reports, Amazon is worth more than the next eight largest retailers located in the United States combined. *See* JP Mangalindan, *Amazon is now worth more than America's 8 largest retailers combined*, Yahoo Finance (Jan. 25, 2017), https://finance.yahoo.com/news/amazon-is-now-worth-more-than-americas-8-largest-retailers-combined-124101625.html.

24.     Amazon's online e-commerce platform allows for third-parties, like Plaintiff, to sell products on its e-commerce platform.

25.     The privilege of selling on Amazon is highly advantageous, as Amazon provides third-parties with exposure to the world marketplace on a scale that no other online retailer can currently provide.

26.     From the outset, Plaintiff has had a contractual and business relationship with Amazon, such that Plaintiff was and is permitted to sell products on Amazon's e-commerce platform.

27.     Third-party sellers, like Plaintiff, create an online storefront on Amazon. When a customer buys a product on Amazon, the customer can see the online store from which the customer is purchasing a product. Thus, Plaintiff has the online equivalent of a brick-and-mortar store.

28.     A significant portion of Plaintiff's business is derived from the sale of products on Amazon and, in particular, through its Amazon storefront.

29.     Once Plaintiff acquires products from reputable sources, Plaintiff resells the same products on Amazon at a profit.

-4-

30.     In general, transactions on Plaintiff's Amazon storefront are completed by Amazon, whereby Amazon ships Plaintiff's products from an Amazon warehouse (known as "Fulfilment by Amazon" or "FBA").

31.     Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront.

32.     Plaintiff's Amazon storefront holds a near perfect customer rating.

33.     A small sample of Plaintiff's recent reviews are shown below:



34.     Any harm that comes to the relationship between Plaintiff and Amazon creates a potential for serious and irreparable injury to Plaintiff.

## DEFENDANTS STIFLE COMPETITION BY FILING FALSE INTELLECTUAL PROPERTY COMPLAINTS

35.     On information and belief, Defendants seek to increase their profits by controlling the distribution and pricing of their products, including the Sky & Sol Products, through unlawful means.

36.     As demonstrated below, Defendants have engaged in a coordinated effort to preclude select third-parties from reselling genuine Sky & Sol Products on online marketplaces by false allegations of intellectual property infringement and defamation.

37.     On information and belief, the purpose of these false complaints and defamatory statements was to prevent Plaintiff from selling genuine Sky & Sol Products on Amazon.

38.     On information and belief, the purpose of these false complaints was to damage Plaintiff's reputation and goodwill, such that Amazon would suspend or terminate its relationship with Plaintiff.

39.     Because Plaintiff sells only genuine products through its Amazon storefront, Defendants have no legitimate intellectual property claim(s) against Plaintiff.

40.     Under the first sale doctrine, Plaintiff is lawfully permitted to re-sell Sky & Sol Products without violating the intellectual property rights or other legal rights of Defendants.

41.     The first sale doctrine provides that, once a manufacturer places a product in the stream of commerce through its first sale, it can no longer enforce its intellectual property rights with regard to re-sellers, so long as the re-sellers are selling authentic, unaltered products.

42.     It is well-known among brand owners that Amazon has a policy of acting on virtually any notice of intellectual property infringement, whether legitimate or not.

43.     As one Amazon expert explained:

In order to meet a minimum liability standard, Amazon will act upon properly submitted and completed notice claims of infringement. They will notify specified

-6-

marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email. The rest though, is up to you. And, unless you (and possibly your legal team) can prove that the Notice claim is false, Amazon considers it valid and actionable.

***Unfortunately, word is out among potential Notice claim abusers that anyone can submit a form.*** Amazon [is] not worried about additional vetting or verification processes. Investigators merely check the form for completed content in all the right spaces, kill the listings and send off the notifications.

They don't independently verify that any of the information is actually correct, or valid. The rights owner makes a legally-binding declaration in the form, and signs it.

*See* Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11,

2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/

(emphasis added).

44.     On information and belief, Defendants were, at all relevant times, aware of the

foregoing Amazon policy with respect to reports of intellectual property infringement.

45.     On information and belief, Defendants were, at all relevant times, aware that

Amazon will act on reports of trademark infringement, regardless of the truth of the report.

46.     Defendants filed complaints with Amazon that alleged that Plaintiff was selling

infringing Sky & Sol Products and/or stolen Sky & Sol Products.

47.     Defendants knew, or should have known, that such allegations were false.

48.     Each complaint submitted to Amazon was signed under penalty of perjury by an

employee or agent of Defendants.

49.     For example, when submitting an infringement report to Amazon, an intellectual

property rights owner must read and accept the following statements:

"I have a good faith belief that the content(s) described above violate(s) my rights described above or those held by the rights owner, and that the use of such content(s) is contrary to law."

"I declare, under penalty of perjury, that the information contained in this notification is correct and accurate and that I am the owner or agent of the owner of the rights described above."

Report Infringement, https://www.amazon.com/report/infringement (last visited October 31, 2019).

50.    Once confirmed through discovery, all other individual(s) responsible for the false intellectual property complaints described below, will be added as defendants in this action.

51.    On or about July 30, 2025, Plaintiff received a notice from Amazon stating as follows:

**Rights owner details:**

-- Nikolai
-- nikolai.r@skyandsol.org

**Rights owner communication:** Dear Amazon Brand Registry Enforcement Team, We are filing a formal and urgent infringement complaint against HAS BRANDS, an unauthorized seller currently hijacking ASIN B0CYTB1BWV, which is part of our protected brand portfolio: Sky & Sol (USPTO Serial No. 98417942, filed and active). We are the sole manufacturer and brand owner of all Sky & Sol products. HAS BRANDS is not authorized, affiliated, or licensed by us in any capacity. We have now completed a test order which confirms they are actively violating Amazon's policies and U.S. trademark law. ✅ Test Buy Confirmation: Seller: HAS BRANDS ASIN: B0CYTB1BWV (SPF 50 Non-Toxic Mineral Sunscreen) Order ID: 112-3926832-8451433 Status: Product delivered Result: The item received is not manufactured, packaged, or distributed by Sky & Sol. It falsely presents itself under our brand name both on the Amazon listing and on the physical product, despite having zero affiliation with us. 🌞 Violations: Trademark Infringement: Unauthorized use of our federally filed brand "Sky & Sol" False Representation: Misleading customers into believing they are buying from us Amazon IP & Listing Abuse Policies Breach: Clear evidence of unauthorized listing and brand impersonation Lanham Act Violation (15 U.S. Code § 1125): False designation of origin and deceptive trade practices 🚨 Context: This violation occurred during a critical high-traffic sales window. It has caused measurable financial damage and brand dilution. HAS BRANDS is part of a wave of hijackers attaching to our ASINs, using deceptive branding and delayed shipping to avoid enforcement. We have physical evidence in-hand and can provide photos and documentation if required. 🔒 Immediate Action Requested: Remove HAS BRANDS from ASIN B0CYTB1BWV immediately Flag and restrict their account for repeated unauthorized brand activity Grant ASIN-level protection to our brand to prevent future reattachment by unauthorized sellers We expect urgent enforcement. Amazon's commitment to protecting customers and brand owners must extend to those actively defending their IP with hard evidence — which we have submitted here. Thank you for your prompt action. Sincerely, Hassan Ilyas

**ASIN:** B0CYTB1BWV

**Title:** Sky and Sol Non-Toxic Natural Mineral Sunscreen SPF 50 | Safest Organic Natural Tallow & Zinc Oxide Sunblock | Reef Safe, Clean Non-Greasy Formula for Face and Body | Women and Men. 3 oz (85 g)

**Violation type:** TrademarkProductPackaging
**Complaint ID:** 18171210071

52.    The Sky & Sol Products identified in the above report are genuine.

-8-

53.     The Sky & Sol Products identified in the above report were manufactured and distributed by Sky & Sol.

54.     On information and belief, prior to filing the above report, Defendants knew that the Sky & Sol Products sold by Plaintiff did not infringe Sky & Sol trademark rights.

55.     Having been unsuccessful in fully accomplishing their goals of removing Plaintiff's ability to resell Sky & Sol Products, on or about August 8, Defendants reported to Amazon that Plaintiff was selling "stolen" Sky & Sol Products.

56.     Defendants knew that the Sky & Sol Products sold by Plaintiff were not stolen.

57.     On information and belief, Defendants' allegation that the Sky & Sol Product were infringing or stolen was knowingly false and made in bad faith.

58.     On information and belief, Defendants have filed similar false complaints against other Amazon sellers.

## HARM TO PLAINTIFF

59.     As a result of the above false rights complaints, Plaintiff's listings relating to Sky & Sol Products were suspended, resulting in an immediate loss of revenue.

60.     It is well-known that complaints to Amazon put Amazon sellers in jeopardy of a full selling suspension, meaning that Plaintiff's ability to sell any and all products on Amazon would be lost.

61.     On information and belief, Defendants were aware that complaints to Amazon, particularly those alleging trademark infringement and/or the sale of stolen goods, result in selling suspensions.

62.     On information and belief, Defendants have used these same tactics, namely filing false infringement and/or stolen goods complaints, against other Amazon sellers.

-9-

63.     At no time has Plaintiff ever sold Sky & Sol Products that infringed any of Sky & Sol's intellectual property or other legal rights.

64.     The Sky & Sol Products sold by Plaintiff were, at all times, authentic products bearing the name of the manufacturer, and were otherwise, at all times, sold lawfully.

65.     Defendants knowingly made false intellectual property rights complaints against Plaintiff.

66.     Upon information and belief, the true purpose of these complaints was to ensure the suspension of Plaintiff's marketplace listings, control pricing and eliminate fair competition.

**COUNT I - DECLARATORY JUDGMENT**
(No Trademark Infringement)

67.     Plaintiff realleges and incorporates all previous paragraphs.

68.     Defendants manufacture and distribute Sky & Sol Products and place such products into the stream of commerce.

69.     Plaintiff stocks, displays, and resells new, genuine Sky & Sol Products, each bearing a true mark.

70.     Defendants have submitted one or more complaints to Amazon that state that Plaintiff sold Sky & Sol Products that infringed Defendants' trademark rights and sold stolen goods.

71.     The Sky & Sol Products sold by Plaintiff were genuine, in their original packaging and lawfully acquired.

72.     Defendants' complaints caused the suspension of Plaintiff's selling privileges as they relate to Sky & Sol Products.

73.     As a result of the suspension of Plaintiff's selling privileges, Plaintiff was unable to sell inventory of Sky & Sol Products on the Amazon.com platform.

091295\3\180091563.v1

74.     Defendants' complaints put Plaintiff in jeopardy of permanent suspension of all selling privileges, which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms.

75.     Under these facts, an actual controversy exists between Plaintiff and Defendants.

76.     Plaintiff is entitled to a declaratory judgment that it has not violated Defendants' trademark rights or other rights, whether under Federal or State law.

### COUNT II – DEFAMATION

77.     Plaintiff realleges and incorporates all previous paragraphs.

78.     Defendants published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff was selling infringing Sky & Sol Products that infringed Defendants' trademark rights and were stolen.

79.     Plaintiff did not infringe the Sky & Sol Registration.

80.     Defendants published false statements to Amazon regarding Plaintiff as described in this Complaint, including reporting to Amazon that Plaintiff was selling stolen Sky & Sol Products.

81.     Plaintiff did not sell stolen Sky & Sol Products.

82.     Defendants' false statements were injurious to Plaintiff's business because they caused Amazon to suspend Plaintiff's selling privileges related to Sky & Sol Products.

83.     Defendants' false statements were injurious to Plaintiff's business because they caused Amazon's and Plaintiff's customers to avoid purchasing products from Plaintiff.

84.     Upon information and belief, Defendants were, at a minimum, negligent in making the false statements to Amazon because, among other things, Defendants knew that Plaintiff sells genuine products.

85.     Defendants' false statements are not protected by any privilege.

-11-

86.     Defendants acted with actual malice or with reckless disregard for the truth of the matter contained in Defendants' false statements to Amazon and Plaintiff's customers.

87.     False statements that are directed to the honesty, efficiency, or other business character traits amount to defamation *per se*.

88.     Here, Defendants published statements that Plaintiff was engaged in trademark infringement and distribution of stolen goods.

89.     Defendants' false statements constitute defamation *per se*.

90.     Additionally, Plaintiff incurred special harm, including, but not limited to, suspension from selling Sky & Sol Products and damage to its relationship with Amazon and its customers.

91.     Whether by defamation per se or by special harm, Plaintiff has suffered injury as Plaintiff's selling privileges related to Sky & Sol Products have been suspended and Plaintiff has lost sales of Sky & Sol Products and many other products.

92.     Plaintiff is entitled to damages, costs, and fees as allowed by law.

93.     Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

**COUNT III – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

94.     Plaintiff realleges and incorporates all previous paragraphs.

95.     Plaintiff has had an advantageous business relationship with Amazon, which allows Plaintiff to sell on Amazon's e-commerce platform as a third-party seller.

96.     Plaintiff is also in a contractual relationship with Amazon. Specifically, Plaintiff has entered into the Amazon Services Business Solutions Agreement ("BSA") with Amazon.

97.     The BSA, including Paragraph S-1.2: (1) allows Plaintiff to list products for sale on the Amazon marketplace and promote the products; and (2) requires that Amazon process orders and remit payment to Plaintiff for sales.

98.     At all relevant times, Defendants were aware of Plaintiff's business relationship with Amazon, as well as Plaintiff's contractual relationship with Amazon.

99.     At all relevant times, Defendants were aware of the terms and conditions of Amazon's BSA and related policies, as well as the advantageous business relationship that comes with being an Amazon seller.

100.    Defendants intentionally and improperly interfered with Plaintiff's advantageous and contractual relationship with Amazon by complaining, in writing, to Amazon, that Plaintiff was selling infringing products.

101.    Defendants' conduct directly and proximately caused disruption of Plaintiff's relationship and contract with Amazon, including a breach of Paragraph S-1.2 of the BSA.

102.    Defendants intended to cause Amazon to suspend Plaintiff's ability to sell Sky & Sol Products on Amazon and therefore interfere with the business relationship Amazon had with Plaintiff.

103.    Defendants had actual knowledge that their actions would cause Amazon to suspend Plaintiff's ability to sell Sky & Sol Products on Amazon.

104.    Defendants' accusations of infringement and sale of stolen goods, made directly to Amazon, were for the improper purpose of suppressing competition.

105.    Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused Plaintiff's listings of Sky & Sol Products to be suspended.

106.    Defendants' actions interfered with Plaintiff's business relationship with Amazon and proximately caused the suspension of Plaintiff's selling privileges.

107.    The intentions of Defendants are demonstrated by the fact that Defendants did not perform any test purchases prior to alleging that the products sold by Plaintiff were infringing.

108.    The intentions of Defendants are demonstrated by the fact that Defendants have never offered any coherent explanation for their reports of trademark infringement.

109.    Defendants' accusations were false and were made maliciously and with ill will.

110.    Plaintiff has been damaged by suspension of these listings by losing revenue related to Sky & Sol Products.

111.    Plaintiff is entitled to damages, costs and attorneys' fees as allowed by law.

112.    Plaintiff has suffered injury and, unless Defendants are enjoined from such activity, will continue to suffer injury.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays for judgment as follows:

A.    An order declaring that Plaintiff has not infringed any valid and enforceable intellectual property right owned by Defendants, including the Sky & Sol Registration;

B.    Preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, successors and assigns, and all others in concert and privity with Defendants, from filing complaints with Amazon and any other e-commerce platform.

C.    Injunctive relief requiring Defendants to rescind all complaints that they have filed against Plaintiff;

D.    An award of all damages that Plaintiff has suffered as a result of Defendants' defamation;

091295\3\180091563.v1

E.      An award of all damages that Plaintiff has suffered as a result of Defendants'

tortious interference;

F.      An award of all costs and fees incurred in this Action; and

G.      Such other and further relief as the Court shall find just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited

to, those issues and claims set forth in any amended complaint or consolidated action.


Dated: August __, 2025                    Respectfully submitted,

                                          TARTER KRINSKY & DROGIN LLP


                                          By: */s*_____
                                              Mark Berkowitz
                                              1350 Broadway
                                              New York, NY  10018
                                              Tel.:    (212) 216-8000
                                              Fax:     (212) 216-8001
                                              E-mail:  mberkowitz@tarterkrinsky.com

                                          ***Attorneys for Plaintiff***

091295\3\180091563.v1

# Exhibit E

| Shipment Location Name (Name of 3PL) | TGC-USA 3PL | | | | | | | | | | | | | | | | | | |
| Address: | 4320 W Kearney STE 115, Springfield, MO 65803 | | | | | | | | | | | | | | | | | | |

| Shipment Name | Shipping Method | PO Number | Stock Keeping Unit(SKU) | Item Name | Picture | description | UPC Code | EXP | ETA | Number of Unit | Weight of Unit | PCS/ CTN | CTNS | Total Quantity (PCS) | Total Quantity (count as 1) | Total Quantity (count as PCS) | G.W (KGS) | Total Volume (KGS) | Cartons are palleted? (Y/N) | BOX SIZE CM | CBM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SH-26-TGC-USA 3PL | SEA-MAX | PO2904023-PO2505030 | SS-MS-50-3 | Face and Body Sunscreen SPF50 防晒霜SPF50 | | 83g | 198168953099 | 15-May-2028 | 4-Jun-2025 | 1 | 99g | 120 | 904 | 108480 | 108500 | 108500 | 13.50 | 12204.00 | N | 60*50.2*16CM | 43.566 |
| | | | | | | | | | | | | 20 | 1 | 20 | | | / | / | / | / | / |
| | | PO2503022 | SS-DNM-3 | Face and Body Moisturizer 保湿霜 | | 83g | 198168306239 | 17-Apr-2028 | 30-Apr-2025 | 1 | 99g | 120 | 416 | 49920 | 49920 | 49920 | 13.50 | 5616.00 | N | 60*50.2*16CM | 20.048 |
| | | | SS-LB-25-3 | Lip Balm SPF25 唇膏SPF25 | | 9g/pc, 3pc in a box | 198168754115 | 27-Apr-2028 | 27-Apr-2025 | 3 | 85g | 192 | 78 | 14976 | 14976 | 14976 | 17.00 | 1326.00 | N | 50.2*42.2*30.5CM | 5.040 |
| | | PO2504023 | SS-Serum | Tallow Serum 牛脂精华液 | | 30ml, glass bottle | 198715597332 | 5-May-2028 | 14-May-2025 | 1 | 143.5 | 100 | 100 | 10000 | 10000 | 10000 | 15.10 | 1510.00 | N | 44.5*44.5*14CM | 2.772 |
| | | PO2503018 | SS-TS-5 | Tallow Soap 牛脂皂 | | 150g/pc. (Pack of 3) | 198168984567 | 1-Apr-2028 | 8-Apr-2025 | 3 | 510g | 40 | 125 | 5000 | 5015 | 15045 | 20.50 | 2562.50 | N | 42*34*23CM | 4.106 |
| | | | | | | | | | | | | 15 | / | 15 | | | / | / | / | / | / |
| | | | | | | | | | | | | | | | **Total Weight (KG)** | **23219** | | **Total CBM** | | **75.53** | |
| SH-26-TGC-USA 3PL | SEA-MAX | INVOICE NO: 2025060 4 | SS-BW-25 | Bamboo Wipes | | Disposable Face towel | 199284553231 | / | / | / | / | / | / | 167 | / | / | 120024 | / | 3315.00 | N | 53.5*46.5*43.5CM | 18.00 |
| | | | | | | | | | | | | | | | **Total Volume Weight (KG)** | **3315** | | **Total CBM** | | **18.00** | |

### *Summary of Inspection Report*

- ○ ***General Info***

  - ■ *Supplier & Factory: Guangzhou Yapeng Fine Chemical Co., Ltd*

  - ■ *Product: Sky and Sol Natural Mineral Sunscreen SPF50*

  - ■ *Style Number: SS-MS-50-3*

  - ■ *Order Quantity: 130,000 PCS*

  - ■ *Actual Available Quantity: 130,125 PCS*

  - ■ *Inspection Date & Location: January 2, 2025, Guangzhou, Guangdong*

  - ■ *Inspector: Jenny Huang, Reviewed by Amy*

  - ■ *Final Judgment: ✅ PASSED*

- ○ ***Inspection Categories & Results***

  - ■ *Quantity Conformity: Conformed*

  - ■ *Product Conformity: ⚠️ Pending [SS–SERUM & TS-5 in in film-resolved]*

  - ■ *Workmanship: Passed*

  - ■ *Data Measurement:  Passed*

  - ■ *On-site Testing:  Pending [didn't allow Drop test]*

  - ■ *Packaging: Passed*

- ○ ***Quantity Details***

  - ■ *Conformed*

- ○ ***Product Conformity***

  - ■ *Style, Material, Color, and Structure: ✅ All matched reference samples*

  - ■ *No approval sample was provided, so conformity is based on provided documentation.*

- *Workmanship*

  - *Inspection per ANSI/ASQ Z1.4 Level II, AQL 2.5 (Major), 4.0 (Minor)*

  - *Sampled: 500 PCS*

  - *Minor Defects Found: 7*

    - *3 impurity marks*

    - *3 scratch marks*

    - *1 white dot*

  - *No critical or major defects → **Passed workmanship check***

- *Data Measurements*

  - ✅ *All dimensions and weights within expected tolerances*

- *On-site Testing*

  - ✅ *Function Check: Passed*

  - ✅ *3M Tape Test: Passed*

  - ✅ *Heavy Metal Test :Passed*

  - ✅ *pH Value Test: Passed*

  - ⚠️ *Carton Drop Test: Refused by factory*

  - ✅ *Barcode scan test: Successful*

- *Packaging Check*

  - ✅ *Conforms to spec for packaging design, labels, tags, instructions, and barcodes*

  - *120 pieces packed per carton; inner packaging uses bubble wrap*

- *Photographic Evidence*

  - *Includes:*

    - *Factory exterior & workshop*

- *Carton & packaging layout*

- *Labeling, barcode, product close-ups*

- *Defects shown clearly (pages 4–18)*

- *Test procedures visually documented (odor, pressure, capacity, pH, etc.)*

  - ***Analysis & Notes***

- *No critical nonconformities identified*

- *Inspector recommends **Passed***

- *Client's final approval required for shipment*

- *Notes clarify this is a snapshot of goods at one moment; does not replace contractual responsibilities or serve as shipment authorization*
  -

# Exhibit F

Date: 06/25/2025 **BILL OF LADING** Page 1

### SHIP FROM

| | |
|---|---|
| Name: | Rapid freight supply |
| Address: | 15066 shoemaker ave |
| City/State/Zip: | Santa Fe Springs CA 90670 |
| SID#: | FOB: ☐ |
| Expected Ship Date: | 06/26/2025 |
| Shipping Hours: | 13:00-18:00 |
| Stop: | Stop 1 |

### SHIP TO

| | |
|---|---|
| Name: | Good Company Ships |
| Address: | 4320 W Kearney STE 115 |
| City/State/Zip: | Springfield MO 65803 |
| CID#: | FOB: ☐ |
| Expected Delivery Date: | 06/30/2025 |
| Stop: | Stop 2 |

**Bill of Lading Number:** W32909

**CARRIER NAME:**

Trailer Number:

Seal Number(s):

**SCAC:**

**PRO Number:**

### THIRD PARTY FREIGHT CHARGES BILL TO

Name:

Address:

City/State/Zip:

SPECIAL INSTRUCTIONS:

**Freight Charge Terms (freight charges are prepaid unless marked otherwise):**

Prepaid _____ Collect _____ Third Party __X__

☐ Master Bill of Lading: with attached underlying Bills of Lading

### CUSTOMER ORDER INFORMATION

| CUSTOMER ORDER NUMBER | # PKGS | WEIGHT | PALLET/SLIP | | ADDITIONAL SHIPPER INFO |
|---|---|---|---|---|---|
| Ref# NICHOOKER1623=527ctns 12P+565ctns 14P | | 44,000 lbs | Y | N | |
| **GRAND TOTAL** | | 44,000 lbs | | | |

### CARRIER INFORMATION

| HANDLING UNIT | | PACKAGE | | | | | LTL ONLY | |
|---|---|---|---|---|---|---|---|---|
| QTY | TYPE | QTY | TYPE | WEIGHT | HM (X) | COMMODITY DESCRIPTION | NMFC # | NMFC CLASS |
| 26 | Pallets | | | 44,000 lbs | | sun cream/moisturizer/lip Balm/serum/soap | | |
| 26 | | | | **44,000 lbs** | | **GRAND TOTAL** | | |

Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property as follows: The agreed or declared value of the property is specifically stated by the shipper to be not exceeding

per _____

| P.D. Box 241 | SCOTTSDALE, AZ 85251 Phone:
(904) 330-4400

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

**Shipper Signature** ✎

**SHIPPER SIGNATURE / DATE**
This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the Department of Transportation.

**Trailer Loaded:** **Freight Counted:**

☐ By Shipper ☐ By Shipper

☐ By Driver ☐ By Driver/pallets said to contain:

☐ By Driver/Pieces

**CARRIER SIGNATURE / PICKUP DATE**
Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent documentation in the vehicle.
Property described above is received in good order, except as noted.

π̄ E̶ E̶ E̶ E̶ —





Ƴ H D

127.

4996

# Lost Report

Delta Ecommerce LLC on June 25, 2025 entrusted our company to carry the U.S. inland
FTL card dispatch order (Official Order No.: TI250607185, Bill of Lading No.:
NICHOOKER1623 = 527ctns 12P + 565ctns 14P), Delivery Note No.: W32909 The time line
of this order is as follows. W32909 The status of each timeline for this order is as
follows:

July 7: URBANDESI TRUCKING INC (hereinafter referred to as "Cass") feedback
pickup

July 10: Cass feedback local July 9, the car's fuel pump is broken, need to
repair.

July 11: Cass feedback with the recipient of the appointment with a new address
on July 14 to arrange delivery

July 12: the vehicle GPS location stopped updating

July 14: the driver began to lose contact, the phone can not be reached.

July 17: The trucker believed that the entire shipment was suspected to be
missing, a total of 26 pallets and 1,092 cartons.

July 18: Delta Ecommerce LLC made the U.S. shipper (company name: Rapid freight
supply, detailed address: 15066 shoemaker ave, SANTA FE SPRINGS, CA 90670) to
report to the police at the local police station, and there is no progress yet.

July 22: In order to promote the investigation by the US agent Waggon LLC, we have
initiated a claim for Delta Ecommerce LLC locally based on the commercial invoice
provided by Delta Ecommerce LLC, and there is no progress yet.

It is hereby certified!

URBANDESI TRUCKING INC
July 31, 2025

# Exhibit G



Date:20250804
To: 中国平安财产保险股份有限公司

Dear Sirs,

## **CLAIM BILL**

We regret to inform you that the following goods have been found in a missing condition as stated below:

Insurance Policy No.: ██████████████
Name of Vessel / Flight No.: LURLINE
Bill of Lading / Airway Bill No.: CYNB25060420   Dated: 2025.6.11
Voyage: From   Shanghai           To  LONG BEACH,CA,USA
Description of goods: 防晒霜spf50+保湿霜+唇膏+牛油精华液+牛脂皂，1624箱（198441件）
Discharging Port & Date: LONG BEACH, 2025.6.22

Total Claim Amount: 642304.08 USD
The breakdown of the claim amount is: 435357.62 USD

We will be highly appreciated to see your kind remittance to the bank account as follows:
**Beneficiary: Delta Ecommerce LLC**
**Account No.:** ████████████
**Bank Name:** ████████████████
**Bank Address:** ████████████████████
**Swift Code:** ████████████
**Currency Type: USD**

Thank you for your cooperation.

Sincerely,





Tel: ███████████
Fax:
Person in charge: Max Medroso
Address: ██████████████████████████████5803
Email: ██████████████████

# Exhibit H





**Sky and Sol Natural Mineral Sunscreen SPF50**

QTY: 120 PCS

SKU: SS-MS-50-3

G TIN: 198168953099

EXP: May 15 , 2028

1  98168  95309  9

AVOID HEAT

CM



1  98168  95309  9



